THE STATE EX REL. CITY OF BRECKENRIDGE v. L. D. THOMPSON, State Auditor.—15 S. W. (2d) 346.

Court en Banc, March 27, 1929.

324

*Paul D. Kitt* for relator.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Special Assistant Attorney-General, for respondent; *D. E. Adams* of counsel.

WALKER, J.—This is a proceeding in mandamus to compel the respondent, as State Auditor, to register certain bonds issued by the city of Breckenridge to defray the expenses of street improvement.

The grounds of objection urged by the respondent to the registration of these bonds are: (1) That the ordinance calling the election to test the sense of the voters on the issuance of the bonds did not sufficiently state the object and purpose for which they were to be issued; and (2) that the notice of the election did not state the maximum rate of interest the bonds were to bear.

Breckenridge is a city of the fourth class. As such its grant of power to issue bonds to defray the expenses of improvements, as at bar, is specifically prescribed in Section 8503, Revised Statutes 1919. Other sections of the statute grant power to cities of this class for the issuance of bonds for the incurring of debts of a different character from that in question. In view of their having primarily a different purpose from Section 8503, their consideration, except incidentally, may be eliminated. Section 8503 is as follows:

"Every city of the fourth class in this State shall have and is hereby granted power, authority and right to issue its bonds, within the limits prescribed by the Constitution, for the purpose of paving, graveling, macadamizing, guttering and curbing all or any part of any public street, alley, avenue or public highway. . . . But such bonds shall not be issued until two-thirds of the legal voters of such city have assented thereto in accordance with Article VIII, Chapter 72, Revised Statutes 1919."

The ordinance passed by the board of aldermen under the above statute, so far as the same is material to the matter at issue, is as follows:

"A special election is hereby ordered to be held in the City of Breckenridge, Missouri, on Wednesday, June 6, 1928, for the purpose of testing the sense of the voters of said city upon the following proposition, to-wit: To incur indebtedness of said City of Brecken-

ridge in the sum of twenty thousand dollars, for the purpose of the improvement of the streets of said city; to authorize the Board of Aldermen to borrow the said sum for said purpose, and to issue the bonds of the said city therefor." [Ordinance No. 116.]

I. The validity of this ordinance is assailed on the ground that it is indefinite and fails in its purpose in creating a legal basis for the issuance of a notice to inform the voters of the proposed action of the board of aldermen. More concretely stated, the ordinance is alleged to be invalid in that the election ordered is stated to be "for the improvement of the streets of the city" and not for "the paving, graveling, macadamizing, guttering and curbing" of the same as stated in Section 8503.

An incidental reference to Section 8657, Article VIII, Chapter 72, Revised Statutes 1919, as amended, Laws 1927, p. 317, is necessary in this connection in that, by special reference in Section 8503, it prescribes the course to be pursued in the exercise of the power granted in the latter section. That prescription is general in its nature and is limited to requiring notice of the proposed election and to stating the time and the manner in which it shall be given. A compliance with these requirements is not questioned. It remains to be determined, therefore, whether the ordinance, measured by its terms, constituted a sufficient compliance with the statute to effect the purpose intended to be accomplished by the notice required therein. The purpose of the ordinance generally stated was to give authoritative expression to the action of the board of aldermen. The purpose of the notice was, as the statute aptly declares, "to test the sense of the voters," as a necessary preliminary to further action. To render the test effective, within the meaning of the statute, it was essential that the notice (which in this case was in literal conformity with the ordinance), be so framed as to definitely inform the voters of the purpose of the creation of the proposed debt. In determining whether this notice effected the purpose intended, we are led to a consideration of the character of Section 8503, upon which this proceeding is based. Without elaboration it may be construed as promotive of the general welfare and, as such, given a liberal interpretation. This classification may, under the rules of construction, be applied to ordinances based upon and drawn in conformity with that statute. If it be contended that the voter was unable to tell whether by the terms "the improvement of the streets" was meant either or all of the terms used in the statute, it will by reason of the character of the law and the ultimate purpose to be effected by its observance, be enough to say that either of the statutory terms was but a specific application of the general term "street improvement," and that this sufficed to inform the voter

of the purpose of the proposed creation of the debt. That the information conveyed by the general terms employed in the ordinance and notice was ample to effect the purpose intended by their adoption and application has been attested by an affirmative vote of more than two-thirds of the electors of the city.

The creation of the debt and the consequent increase in taxes was primarily the concern of the voter. That he approved of the increase and was indifferent to the particular character of the improvement to be made was rendered evident by his vote. Under these circumstances it cannot be said that the terms of the ordinance were misleading.

Considering, therefore, the character of the statute under which it is sought to create this indebtedness and the purpose thereby to be accomplished, and that the procedural statute (Section 8567), nowhere requires that the specific terms in Section 8503 shall be employed in rendering the statute operative, we are of the opinion that the use of the general terms for the improvement of the streets in the ordinance and notice was a sufficient compliance with the law to authorize the issuance of the bonds.

II. The further contention is made, however, that the notice of the election was invalid in not stating the maximum rate of interest the bonds were to bear. While the law under which it is sought to create the indebtedness may be liberally construed, so far as its salutary purpose is concerned, being of purely statutory origin we must look to the statute for its procedure or the manner of its enforcement. Thus guided we look in vain for any applicable statute requiring a statement to be made in the ordinance or the notice of the election of the rate of interest the bonds were to bear. That this contended requirement should be made within the limits of the statute by the subsequent action of the board of aldermen, when the voters have approved of the issuance of the bonds, is not a matter of controversy. But such action, prior thereto, is not required by the law or the better part of wisdom. The matter of fixing the rate of interest on securities should be determined by conditions existing at the time of their issuance. The attempt, therefore, to limit the action of the Board of Aldermen in this regard to a time long prior to the issuing of such securities might tend to the fixing of a rate of interest too high or too low for the financial condition of the market at the time the bonds were offered for sale and their negotiation would thereby be rendered difficult or prevented.

If it be contended that it is necessary for the information of the voter that the notice of the election should state the rate of interest the bonds will bear, a sufficient answer thereto appears in

the statute (Sec. 8659, as amended, Laws 1927, p. 318), which provides that such "bonds shall bear interest from date at a rate not exceeding six per cent per annum, payable semi-annually." The primary concern of the voter, as we have stated, being in the incurring of the city's debt, of which the notice of election gives him full information, and the interest thereon being limited by the law to a fixed rate, the voter must be presumed to have knowledge of the fact that this rate will not be exceeded by the board. Under these circumstances further notice to the voter is unnecessary. The Legislature, therefore, in its wisdom, recognizing the fact that some discretion should be vested in boards and other bodies empowered to issue bonds, has, subject to the conditions stated, left to the board of aldermen the fixing of the rate of interest on such bonds.

It may be admitted that there was a statute approved March 31, 1921, Laws 1921, page 169, concerning the rate of interest to be fixed on bonds issued by subdivisions of the State which "provides that in every election hereafter held for the purpose of authorizing an issue of bonds the maximum rate of interest such bonds are to bear shall be stated in the notice of such election." This proviso was held to be invalid in State ex rel. Niedermeyer v. Hackmann, 292 Mo. 27, 237 S. W. 742, as not being included in the title to the act. While this act was amended at the First Extra Session of the General Assembly in 1921 (Laws 1921, 1st Ex. Sess. p. 38), by the addition of a second proviso thereto, the original proviso, with no change in the title, was retained in the amended act. Its invalidity in that respect was, therefore, not cured.

We are therefore of the opinion that the alternative writ issued herein should be made peremptory and that the respondent be required to register these bonds. It is so ordered. All concur.