TAYLOR R. PALMER, J. R. TODD, WERDEN COWLES, M. E. METCALF, LEE MELLOR, MRS. LEE MELLOR, MRS. J. M. POST, MRS. GEO. JACKSON, TILLIE EDWARD, A. DECKER, MRS. G. McCOLM, W. F. DELISSA, MRS. MARKS, ELIZABETH S. BARNES, MRS. M. BELL, JOHN METCALF, GEORGE JACKSON, W. A. DELISSA, C. L. DELISSA, M. H. BRYSON, JOHN T. THROUGHTON, MRS. J. H. BRYSON, J. F. SECHRIST, M. L. McCOLM, ARTHUR CUFFY, F. A. MARKS, G. C. MASSIE, FRANK CALE, G. W. BALL, P. J. GRABB, ALBERT PHILLIPS, N. BLAKE, NELS NELSON, GARFIELD LAPP, GRACE LAPP, MRS. J. T. THROUGHTON, J. T. CHESTER, MRS. J. T. CHESTER and THE OZARK UTILITIES COMPANY, a Corporation, Appellants, v. THE CITY OF LIBERAL, W. V. BRADEN, W. S. WEAVER, JIM TRAVIS, HERBERT HARVEY and MAX DAVIDSON, Members of the Board of Aldermen; E. A. WILSON, City Clerk and EDWIN M. LIBSCOMB, Treasurer of said City of Liberal; THE CARDIN MACHINERY AND ELECTRIC CONSTRUCTION COMPANY, a Co-Partnership Composed of GEORGIA N. HORN, JAMES F. COFFEY, JAMES F. HORN, J. W. HORN, and ALEXANDER, McARTHUR & COMPANY, a Corporation.—64 S. W. (2d) 265.

Division Two, December 20, 1933.

*W. E. Suddath, T. W. Martin, H. W. Timmons* and *Sparrow & Patterson* for appellants.

*C. E. Davidson, A. W. Thurman, E. L. Moore* and *Bowersock, Fizzell & Rhodes* for respondents.

*Theodore Rassieur* and *James P. Aylward, amici curiae..*

272

TIPTON, J.—This is an injunction suit brought by the appellants, who were certain taxpayers of the city of Liberal, Missouri, and by the Ozark Utilities Company, a Missouri corporation, owner and operator of an electric light distributing system and the electric street lighting system in that city, against the respondents, who were the city of Liberal, its mayor, city clerk, treasurer and board of aldermen, and against the Cardin Machinery and Electric Construction Company, a copartnership and against Alexander, McArthur & Company, a corporation. The suit was filed in the Circuit Court of Barton County and a temporary injunction was issued by that court enjoining the respondents from proceeding with the sale of its bonds and the erection of an electrical system. The cause was sent to Jasper County on a change of venue and upon trial in that court, judgment was rendered for respondents. Appellants have duly appealed to this court.

Liberal is a city of the fourth class. It held an election on the 24th day of February, 1931, pursuant to an ordinance to test the sense of the qualified voters on the proposition to issue bonds in the amount of $22,000 for the purpose of constructing, erecting, acquiring or purchasing an electric power distributing system and power line for the city. The form of ballot used in this election was as follows:

"For increase of debt for constructing, erecting, acquiring and purchasing an electrical power distribution system and power line for the City of Liberal, Missouri, and the inhabitants thereof."

It was stipulated at the trial of this cause that the city of Liberal

had a population of 847 people, and that the assessed valuation of the city for state and county purposes for the year next preceding before the election was $408,393. The results of the election were 331 votes cast for the proposition and 70 votes cast against it. Thereafter the city passed an ordinance that provided for the issuance of twenty-two bonds of $1000 each. The ordinance further provided for the levying of a direct annual *ad valorem* tax upon all taxable property in the city for the payment of interest and the sinking fund required for bonds so issued. The whole bond issue was sold to Alexander, McArthur & Company, Investment Brokers, located in Kansas City, Missouri. After some unsuccessful attempts to purchase electricity from the Kansas Gas and Electric Company, the Ozark Utilities Company, the Empire District Electric Company and from the city of Lamar, the city entered into a contract with the Cardin Machinery and Electric Construction Company to construct for the sum of $21,972 an electric light distributing system to be owned exclusively by the city, and for the Cardin Company for a period of ten years to furnish electric current to the city for its distributing plant by a generating plant to be built and owned by this company.

I. The appellants contend that the bond issue of $22,000 is invalid both under Sections 12 and 12a of Article 10 of the Constitution of Missouri. The evidence in this case shows that the city of Liberal was not indebted prior to the issuance of these bonds, and that the assessment of all taxable property in the city as of June 1, 1929, was $408,393 and under Section 12, the city would have authority to issue bonds in a sum that would equal five per centum of this assessment, which would be $20,419.65, and therefore, a bond issue for $22,000 would violate Section 12 of this article.

The appellants further contend that while Section 12a of this article allows ''an additional ten (10) per centum on the value of the taxable property therein, for the purpose of purchasing or constructing . . . electric or other light plants, to be owned exclusively by the city so purchasing or constructing'' such plants, that this bond issue is not in compliance with this section. It is the appellants' contention that before a city can become indebted in the amount allowed under Section 12a, it is necessary for the city to own exclusively not only the distributing plant but also the generating units and this bond issue would be invalid if the contract with the Cardin people was adopted or the electric current was furnished from some other utility and connected with the city's distributing plant by a power line. Appellants rely upon the case of Cooper v. Town of Middletown (Ind. App.), 105 N. E. 393, in which the court said:

''We think it clear that the 'electric light works' contemplated by this statute, and voted for by the citizens of said town, comprehends

and includes not only equipment and appliances necessary to receive and carry a current, but also a generating plant.''

We do not believe, however, that we should follow this authority for the reason that it does not seem to be in accord with the policy of this State as declared by our statutes and constitutional provisions. Section 7641, Revised Statutes 1929, gives the city authority to erect, purchase, acquire, maintain and operate electric light plants or any other kind of plant or device for lighting purposes. Section 7642, Revised Statutes 1929, empowers a city which owns or operates an electric light or power line to supply electric current from its light or power line to any other municipal corporation for its use and the use of its inhabitants, while Section 7643, Revised Statutes 1929, authorizes a city that maintains and operates an electric light and power line to procure electric current for that purpose from any other city owning or operating such plant, and to enter into a contract with such city having such plant. It certainly is not contemplated that under these sections a city must maintain and operate both a generating and distributing plant. Section 12a of the Missouri Constitution, in its present form, was adopted by the people in 1920, and in its original form was adopted in November, 1902. Section 7641, Revised Statutes 1929, was enacted in 1891, and there used the following phrase: ''Electric light plants . . . or device for lighting purposes.'' Again the Legislature in 1895 passed an act which we think conclusively shows that it was the policy of this State that the words ''electric light plant'' did not necessarily include a generating plant, but might be construed to be only a distributing plant. Section 6497, Revised Statutes 1899 (Laws 1895, p. 53), was held void by this court on other grounds (State v. Ry., 146 Mo. 155, 47 S. W. 959), but we find that the Legislature at that time used the word ''plant'' to describe a generating or transmission system, as this section uses the phrase ''or plant for generating, transmission, sale or use of electricity'' in giving the city the power to sell franchises. We believe the words ''electric light plant'' as used in our statutes and our Constitution mean either a distributing plant or a generating plant. Section 12a, supra, must not be given too technical or strict construction so as to defeat the very purpose for which it was adopted. In the case of State ex rel. City of Columbia v. Allen, 183 Mo. 283, 82 S. W. 103, this court said:

''While it is true that municipal corporations have only such powers as are either expressly granted to them, or such as are necessarily implied, and that grants of power are strictly construed, so as not to extend them beyond the purpose of the Legislature, yet, as said by this court in Bank v. How, 56 Mo. 1. c. 59, 'the construction must not be so strict or technical as to defeat the evident objects and purposes of their creation.' ''

We, therefore, hold that inasmuch as under Section 12a the city of Liberal had authority to issue bonds in the sum of $22,000 for the erection of an electric distributing plant and power line, and these bonds are not invalid for the reason that the city did not contemplate the erection of a generating unit in connection with a distributing plant or system.

II. The appellants contend that the city of Liberal voted bonds for the purpose of building a distributing plant and a power line, and that this is not the plan the city now proposes to carry into effect under contract with the Cardin Company.

Prior to the bond election the city employed C. A. Shockley, a consulting engineer, who made a preliminary report to the board of aldermen in regard to the building of a municipal electric plant. He recommended a bond issue of $22,000. According to his preliminary report, the proceeds of the bond issue were to be used in building a distributing plant at an estimated cost of $14,588.82, and a six-mile transmission or power line estimated to cost $7187. While it is true that the city voted bonds in the amount of $22,000 for the purposes of building a distributing plant and a transmission line, the evidence fails to show that the city adopted the plan as shown by the Shockley preliminary report. In other words, there was no ordinance passed by the board of aldermen adopting the Shockley plan. After the city of Liberal had voted the bonds, it was unable to secure electric current from the Kansas Gas & Electric Company or any other utility in that vicinity. The city then entered into a contract with the Cardin Company to build for the city a distributing plant at the cost of $21,972, this distributing plant to be owned exclusively by the city, and the Cardin Company also agreed to build a generating plant to be owned by them, to furnish electric current to the city at a stipulated price, and that the electric current to be used by the city was "to be paid from the income or revenue derived from the sale of electrical energy by said City to its consumers; and this agreement to pay said sum or sums does not now create, and it shall never be allowed or held to create any liability against any tax funds of said City; and no taxes, general or special, shall ever be levied now or hereafter upon the property, in the corporate limits of the city of Liberal, Missouri, to pay all or any part of said sum or sums hereinmentioned."

Some time prior to the election the mayor published over his name, and caused to be circulated, a pamphlet wherein it was stated that the plan was to build a distributing system and a power line from Liberal to the Kansas-Missouri border. Appellants claim that this was the plan for which the city voted. It does not appear that the circulation of the plan in the pamphlet over the signature of the

mayor was any part of the election procedure, or that it misled any of the voters or that the result of the election was affected thereby.

In State ex rel. v. Johnson, 330 Mo. 452, 50 S. W. (2d) 121, l. c. 122, this court in speaking through ATWOOD, J. said:

"It is also urged in appellant's behalf that the tax here in question levied against appellant's lot is invalid because prior to the election the mayor and aldermen made public a plan of locating the water mains, fire plugs, etc., which was changed after the election, and a result of such change was that appellant's lot and lots owned by other taxpayers were without the benefit of waterworks for fire protection and domestic use.

"It does not appear that the making or publication of a plan of installing the waterworks system was legally any part of the election procedure, or that such was done for the purpose of misleading voters, or that the result of the election was affected thereby. The fact that the waterworks system was not extended to every part of the city would not make the tax levy void as to lots not served. In 44 Corpus Juris, page 1283, Section 4308, note 4, it is said: 'A water tax is not void because every part of the municipality is not supplied with water.' [See, also, Van Giesen v. Bloomfield, 47 N. J. L. 442, 448, 449, 2 Atl. 249; State, Hoey, Pros., v. Collector of Ocean Township, 39 N. J. L. 75, 78; McQuillin's Municipal Corporations (2 Ed.), p. 321, sec. 2549.]"

The city of Liberal voted bonds to construct an electric distributing plant, and it was contemplated that the electrical energy to be used was to be purchased at wholesale and not manufactured by the city. This is what the city was getting under the Cardin Company's contract. We, therefore, do not believe that the Cardin Company's contract differed from the plan for which the bonds were voted, and that Section 20 of Article 10 of our Constitution was not violated by this contract.

III. The appellants further contend that the contract with the Cardin Company to furnish the city electrical energy is void for the reason that the same has not been approved by two-thirds of the qualified voters of the city as provided for by Section 7028, Revised Statutes 1929, the pertinent parts of which are as follows:

"The board of aldermen may provide for and regulate the lighting of streets and the erection of lamp posts, poles and lights therefor, and shall have power to make contracts with any person, association or corporation, either private or municipal, for the lighting of the streets and other public places of the city with gas, electricity or otherwise: *Provided,* that no such contract shall be made for a longer time than ten years; *and provided further,* that no such contract shall have any legal force until the same shall have been ratified by

a two-thirds majority of the qualified voters of said city voting at an election to be held for that purpose.''

This portion of the above statute relates to street lights and their contracts to furnish electrical energy to municipal distributing plants. It is true that some of this electrical energy purchased from the Cardin Company may be used for street lighting purposes, but we believe the city has authority under Section 7641, supra, to supply the inhabitants of the city with electrical energy necessary for their use and for the city's own use.

IV. Appellants further contend that the Cardin Company operated an electric light plant without a certificate of convenience and necessity from the Public Service Commission of this State, and that this makes the contract with the city unlawful. [State ex rel. Danciger & Company v. Public Service Commission, 275 Mo. 483, 205 S. W. 36.] The facts in that case are that the Danciger Company operated an electric light plant for generating electric current for its own use in its brewery business, located in Weston, Missouri. It produced more electricity than was necessary for its own use and then made some private contracts with certain individuals in Weston, located in the proximity of the company's plant. We held that the sale of surplus electrical energy of a private industrial concern by the owners thereof to a few customers within a limited area does not constitute a public utility business within the jurisdiction of the Public Service Commission, and that the Public Service Commission of this State had no jurisdiction over that company. The Cardin Company does not propose to deal with the public, but only to furnish the city of Liberal with electric current. It is not dealing with the public and it would not be necessary for the Public Service Commission to give a certificate of convenience and necessity before it can start operating in this State.

V. The appellants next complain that the city now proposes to lease to the Cardin Company a portion of a public park owned by the city in order that the Cardin Company may build a generating plant on the park. There is nothing in the contract between the Cardin Company and the city authorizing or compelling the Cardin Company to build a power plant on the city park. It is true that the evidence shows that there had been some discussion between the parties to this contract to the effect that the city would lease a portion of the public park to the Cardin Company for that purpose. However, nothing definite had been done about the matter nor had the terms or the amount of rent to be paid therefor even been discussed. Mr. John W. Horn, who represented the Cardin Company in negotiations with the city, testified:

"Q. Then under the present agreements with the City, if you should find or decide on a more favorable location or for any reason decided to build in another part of the town, that is within your discretion? A. Yes, sir."

Inasmuch as the contract between the city and the Cardin Company does not specifically state where the power plant is to be built, we will not pass on the question of whether or not it could be built on this public park owned by the city, as it may be built on an entirely different tract of land. We believe that the trial court properly dissolved the temporary injunction heretofore issued in this case and was correct in entering its decree for the respondents. The judgment of the trial court is, therefore, affirmed. All concur.