BOARD OF PUBLIC WORKS OF ROLLA, MISSOURI, RESPONDENT, v. SHO-ME POWER CORPORATION, APPELLANT.—236 SW (2) 603.

Springfield Court of Appeals. January 20, 1951.

*Gregory C. Stockard, Louis H. Breuer* for Appellant.

*E. W. Allison* and *Dewey A. Routh* for Respondent.

BLAIR, J.—The appellate jurisdiction of this Court is not challenged. The action of the trial court was on an amended petition, filed July 29, 1949, seeking an order declaring null and void a contract described in such petition, for a declaratory judgment, and for other equitable relief.

The answer thereto, while admitting certain portions of the petition, denied other parts thereof.

Respondent filed its motion to strike out certain portions of such answer. The various pleadings will be discussed in this opinion later, insofar as we conclude that they seem to bear on the issues involved.

On December 4, 1949, the trial court made its findings of fact, and, on the same day, entered its judgment, Defendant appealed from such judgment, and, in its brief, has cited cases, claimed to be in support of its contentions.

The first contention of appellant is that the Circuit Court of Phelps County, had no initial jurisdiction and that such jurisdiction resided only in the Public Service Commission of Missouri. This point is raised in appellant's first assignment of errors, as well as in its Points and Authorities.

Appellant first cites Sections 5645 and 5646, of the Revised Statutes of Missouri. Its brief does not say whether those sections are found in the 1939 revision or in the Revised Statutes Annotated. In both revisions, the numbers of the sections are the same.

Section 5645, R. S. Mo. 1939, not subsequently amended, deals entirely with service, rates and charges of public service companies, and does not deal with the jurisdiction of the Public Service Commission over the validity of contracts between a public service company and any city or any board in behalf of such city. That section of the statute has no direct or inferential bearing upon the jurisdiction of the circuit court of any county, in a case like this.

Section 5646, R. S. Mo. 1939, is very long and deals entirely with the general power of the Public Service Commission over public service companies, to see that such companies comply with their duties under the law, and with authority in the Public Service Commission to make orders in respect thereto. It in no wise touches upon the jurisdiction of the Public Service Commission or of the circuit court over contracts, not dealing with rates and service.

Appellant has cited four decisions of the Supreme Court, in supposed support of its contention that the Circuit Court of Phelps County had no jurisdiction in this sort of case, either initial or exclusive.

Appellant first cites State ex rel. Cirese v. Ridge, 345 Mo. 1096, 138 S. W. (2d) 1012. That was a decision of the Supreme Court en Banc, by Judge Gantt. It involved a suit between two public service companies as to their rights to deliver electric service to the people of Kansas City. The Supreme Court held therein that no public service company could perform such service, without the consent of the Missouri Public Service Commission, and that the Circuit Court in Kansas City had no power to determine the question of such right.

We are unable to see how such decision has any bearing upon the question of the validity of a contract, made with a public service

company to deliver service to any city in the State, to enable such city to give service over its own system. It merely held that, before a public service company can enter the field already served by another public service company, it must have the consent of the Missouri Public Service Commission.

Appellant next cites State ex inf. v. Kansas City Gas Company, 254, Mo. 515, 163 S. W. 854. That was a decision of the Supreme Court en Banc, by Lamm, C. J., with Bond, J., dissenting.

That case simply involved the power of the circuit court to pass. upon the sufficiency of the service rendered by a public service company, already in the city in question, and in no wise passed on the power of the circuit court (or of any court in Missouri) to determine the validity of a contract for public service in such city, approved by the Public Service Commission. The case is not in point on the alleged lack of the Circuit Court of Phelps County to determine whether or not an existing contract, like the contract here discussed, was void.

Appellant next cites State ex rel. et al. v. Public Service Commission, 180 S. W. (2d) 40. That too was a decision by the Supreme Court en Banc, by Hyde, J. It simply held that the circuit court of the proper county had valid jurisdiction, when the appeal taken was from a prior order of the Public Service Commission. The original jurisdiction of the circuit court is not discussed and the case is no authority for the assertion made by appellant.

The last case cited on this point by appellant is State ex rel. Kansas City Public Service Co. v. Latshaw, 38 S. W. (2d) 105. This is evidently an improper citation, as a search has revealed no such case, but does reveal a case against Latshaw, Judge, in the Supreme Court en Banc, by Frank, J., in 30 S. W. (2d) at page 105. This case may have been, and probably is, the case appellant meant to cite.

That case simply held that a city cannot make a contract with a public service company that the Public Service Commission could not revise in respect to the rates named therein.

The circuit court there had sought to prohibit the Public Service Commission from passing on the propriety of the rates asked and the Public Service Commission had proceeded to file rates, ignoring the order of the circuit court. The case simply held that the Public Service Commission had the power to fix new rates, notwithstanding rates specified in an existing contract. The power of the circuit court to invalidate an existing contract as to rates, when the Public Service Commission had not yet acted on that subject, was not involved.

We do not understand that appellant contends that the circuit court is directly held to be without power to declare void an existing contract; but appellant contends that all of the statutes and cases cited have a tendency to show that the Public Service Commission, not only has jurisdiction to fix rates and to declare what service is necessary, but also has jurisdiction to declare that the particular utility contract

challenged is void, for any reason, and that the circuit court has no jurisdiction in such a case, even before the Public Service Commission has acted.

The cases cited by respondent add little to what the cases cited by appellant hold as to the jurisdiction of the Missouri Public Service Commission over rates and service specified in a contract, which does not attempt to fix rates or specify service.

Bell v. City of Fayette, 325 Mo. 75, 28 S. W. (2d) 356, of the Supreme Court en Banc, by White, J., cited by respondent, was not a rate or service case. That case involved a contract which certain citizens deemed disadvantageous to the city, as to its indebtedness, for the purchase of machinery to operate an electric light and power plant. The contract involved did not attempt to fix rates or specify the service to be rendered under it, and the circuit court was held to have jurisdiction.

May Department Stores Co. v. Union Electric Light & Power Co. 341 Mo. 299, 107 S. W. (2d) 41, cited by respondent, really supports what appellant's cases have held as to the power of the Public Service Commission over rates and service, even if fixed by a pre-existing contract.

That case was decided by Division One of the Supreme Court, through Judge Hyde, then Commissioner. It simply involved the right of the utility to charge rates specified in the original contract, executed before there was any Public Service Commission, which later fixed rates under another and different schedule. The circuit court was held to have jurisdiction to determine the propriety of the collections made by the utility under the schedules of a pre-existing contract.

Respondent also cites Palmer, et al. v. The City of Liberal, 334 Mo. 266, 64 S. W. (2d) 265, by Tipton, J., of Division Two, of the Supreme Court, and Kansas City Light & Power Company v. Midland Realty Company, 338 Mo. 1141, 93 S. W. (2d) 954, by Hays, J., of Division One of the Supreme Court. They add little to the other cases cited by respondent.

We do not understand the statutes and cases cited by appellant to hold such jurisdiction, even by inference, could not be exercised by the circuit court, and we hold that the power of the circuit court cannot be challenged in this case.

Appellant's assignment of error, in this respect, must be overruled.

The second paragraph in appellant's brief, and covered by its assignments of error, briefly stated that the City of Rolla did not institute the suit itself, and has never contended that appellant's public service contract was not carried out by appellant. The Circuit court held that the board had no power to enter into this contract with appellant.

We will recite briefly the facts in the case, as developed in the trial, which appellant contends estopped the respondent from attacking the

validity of its contract with appellant. We quote from appellant's brief as follows:

"The City of Rolla owns and operates the electric light, water and sewer system and for the purpose of doing so created and set up the respondent, Board of Public Works, which Paragraph Two of respondent's petition says is 'Vested with authority and power to exercise full control over the management and operation of said municipally owned electric light and power plant and distribution system, including power and authority to enforce the performances of all contracts and work pertaining to the proper operations of said municipally owned electric light and power plant and distribution system.'

"The contract in issue, is dated April 24, 1948, was entered into with the appellant, by the respondent, 'acting on behalf of the City of Rolla, Missouri', and which contract was signed by the parties and attested by W. L. Bradford, City Clerk, who affixed the city seal thereto.

"The city Clerk when asked the circumstances under which he attested, signed as city clerk and affixed the city seal to the contract testified, 'Well, the city attorney prepared these papers and I am sure that is how it happened.' The clerk further testified that he did not remember all of the details but he knew that he did not write the contract, and further testified that he was not in the habit of affixing the official seal of the city to documents binding the city, without the authority to do so, and that his authority came from the city, and that he was convinced that the contract had been prepared by someone acting for the city, and that such was his understanding and belief.

"The clerk also testified that his records show that afterwards, the city council passed Resolution No. 240, authorizing and directing respondent to negotiate a contract with the Union Electric Company for the purchase of electric current for the city of Rolla.

"After this contract was entered into the appellant acting thereunder, proceeded to supply the electrical energy provided for in said contract and in all other matters comply with each and all of the conditions thereof.

"Beginning with such operations, the respondent, month by month, submitted to the city council and the Mayor, in formal sessions, the bills and expenses incurred in obtaining electrical energ for the city under the contract, all of which bills so incurred by the respondent was audited and paid by the city council and Mayor by order made in formal sessions. And this process, on the part of the city in recognizing the contract and paying all bills and expenses incurred under it, continued from April 24, 1948, the date on which the contract was signed, down to the day of trial. And these payments were made by the city monthly.

: ''In addition to the city so adopting and recognizing the contract as the city obligation, the city received from the respondent large sums of money monthly, received from appellant under the contract, which went into the general fund of the city.

''During the process of furnishing electrical energy on the part of the appellant, under the contract, there was a temporary failure of power and an outage, on different occasions, as appears by statement of Superintendent.

''All such failures were due to the act of God, or other unavoidable causes and fully provided for and allowable under the provisions of the contract, and did not in any wise breach contract or violate its terms.''

On the other hand, respondent contends that the facts are as set out in its brief:

''For many years prior to the existence of the contract in controversy, the respondent had been purchasing electrical energy from the appellant without a written contract between the parties. On April 24, 1948, a written contract was signed by the respondent and the appellant which provided for the purchase of electrical energy by respondent from appellant.

''Respondent's petition plead two principal grounds of invalidity of said contract: First, that the said contract which purported to involve a municipal corporation as a company was never lawfully authorized by the City of Rolla, Missouri, nor by any authorized officer or legal representative of the city, nor was said contract ever approved by the City of Rolla, Missouri. Second, that said purported contract is the reason that the respondent was induced to sign said contract by the representation of appellant that appellant was fully prepared and equipped to deliver an adequate supply of electrical energy necessary and required to supply the needs of the public served by respondent in operating said municipally owned utilities; that said representations were not true; that respondent, relying upon said untrue representation, signed said purported contract; that said contract was signed on the part of appellant by its officers and on the part of respondent by the Board of Public Works of the City of Rolla, Missouri, by and through the president of said Board, and attested by the City Clerk of Rolla, Missouri.

''In substantiating the first ground of invalidity, the City clerk of Rolla, Missouri, testifies that he had made a complete search of the minutes and records of the Board of Aldermen of Rolla, Missouri, and that there is no record of said Board ever having authorized the Board of Public Works to enter into a contract with any person or corporation for the purchase of electrical energy; nor any record showing that the proper officials of said City had ever entered into such a contract or that such a contract

had ever been presented to the Board of Aldermen for approval or had been by said Board approved. The City Clerk did testify that said purported contract was presented to him and that he attested said paper by affixing his signature as City Clerk and the City Seal. Mr. Schuman testified that he was Secretary and a member of the Board of Public Works of Rolla, Missouri; that the said Board caused the purported contract to be signed without the knowledge of the City and without the City's Authorization or consent. Mr. Bronson testified that he was General Manager of respondent; that the contract was received by him from appellant through the mail; that he thereafter presented the contract to the Board of Public Works and that the President of the Board of Public Works, Mr. Castleman, signed the contract as presidents of said Board; that Mr. Bronson then took the contract to the City Clerk, who signed and affixed the City Seal; that none of the signatures were affixed in the presence of the Board of Aldermen, nor was the contract shown to the Board of Aldermen, but after being signed was forwarded by Mr. Bronson to the appellant immediately by mail.''

The City of Rolla, with respect to its muncipally owned public service system, had established by ordinance the Board of Public Works, which Board was the nominal plaintiff in the circuit court. Appellant contended that the city itself was the real plaintiff, and, except for occasional outages, was satisfied with the service rendered by defendant, now appellant, under such contract, and the city and respondent are now estopped from attacking the validity of such contract.

We are satisfied that the Circuit Court of Phelps County had the power to declare such contract to be void and invalid, if such contract was improperly obtained. We are not convinced, however, that any fraud, or other improper act, was practiced by appellant in the procurement and carrying out of such contract. The Board of Public Works was created for the very purpose of being satisfied that the interests of the city were fully protected. The officials of the City of Rolla knew that its Board was negotiating the contract with appellant and those officials knew all of the terms and conditions of the contract, which the Board was considering. Neither the city nor its Board can now attack such contract as being invalid. Both are now estopped.

Respondent cites Riley v. City of Rock Port, 165 S. W. (2d) 880, of the Kansas City Court of Appeals, by Judge Cave. That case simply held that the city was not estopped from questioning the validity of services, not specified in the contract, even if such services were usual in such contracts. There was no showing that the Public Service Commission had specified otherwise.

Dearmont v. Mound City, 278 S. W. 802, of the Kansas City Court of Appeals, by Bland, J., cited by respondent, simply held that, ''It is

well settled that, where there is no ordinance or the ordinance is void, there can be no ratification or estoppel.''

There can be no contention in this case that the ordinance, creating respondent, and the making by it of the contract itself, were void. We do not believe, under the evidence, that respondent made a contract with appellant which it was not authorized by the City of Rolla to make.

It is contended by respondent that there was no record of an ordinance giving the Board of Public works power to make a contract. Lack of such power is not supported by the evidence, even if such an ordinance was not shown. The City of Rolla was not a party to the suit, but we think the evidence fully supports the power of respondent to make the contract for it, which it did make.

The record is very long; but we are satisfied that we have recited enough of the facts to understand and determine all of the issues really involved in this case. The judgment of the Circuit Court was not justified, under the facts shown, and must be reversed. It is so ordered. *Vandeventer, P. J.,* concurs in result. *McDowell, J.,* concurs.