**LITTLE PORTION FRANCISCAN SISTERS, INC., Lorene Louise Boatright, and John O. Howell, Plaintiffs–Appellants,**

v.

**Doug BOATRIGHT, in his capacity as Mayor of the City of Republic, Missouri, and Tom Cunningham, Darryl Barr, Stan Heimer, Doug Shy, Rabbi Dewayne Willis, Robert Swearingin, Jim Huntsinger, and Bill Pool, in their capacity as Aldermen in the City of Republic, Missouri, and The City of Republic, Missouri, a Municipal Corporation, Defendants–Respondents.**

No. 23296.

Missouri Court of Appeals,
Southern District,
Division Two.

July 27, 2000.

Motion for Rehearing or Transfer
Denied Aug. 16, 2000.

Application for Transfer Denied
Oct. 3, 2000.

**444**

Don G. Busch, Lathrop & Gage, L.C., Springfield, for Appellants.

James M. Kelly, Springfield, for Respondents.

Before PREWITT, J., GARRISON, J., and BARNEY, J.

PER CURIAM.

This is an appeal from a judgment entered in a suit for declaratory judgment and injunction filed by Plaintiffs against the City of Republic, Missouri, its mayor, and the members of its Board of Aldermen ("Defendants"). In that suit, Plaintiffs, property owners in Republic, sought a declaration that Republic was restricted in the manner it could use the proceeds of sewer bonds, and an injunction to prevent what they consider to be unauthorized use of those funds. The trial court entered judgment for Defendants and this appeal followed.

The ballot submitting the sewer bond issue to the voters contained the following provision:

Shall the City of Republic, Missouri issue and sell negotiable combined waterworks and sewerage system revenue bonds in the amount of Fourteen Million Three Hundred Thousand Dollars ($14,-300,000) for the purpose of payment of all or a part of the costs of acquiring real estate and rights-of-way, constructing, extending and improving the combined waterworks and sewerage system of the City by constructing a new sewerage treatment plant, at the location of the existing treatment plant, and appurtenances; . . .

In their sole point on appeal, Plaintiffs contend that the trial court erred in denying their claim for a declaratory judgment and injunctive relief because the ballot approved by the voters "restricted the expenditure of the bond's proceeds to the purpose of 'constructing a new sewer treatment plant at the location of the existing treatment plant and appurtenances.' " They argue that such restriction would not permit the expenditure of those bond proceeds for the construction of new sanitary

sewers, removal of existing lift stations and the construction of new lift stations not necessary to connect the new sewerage treatment plant to the existing sewer system. They explain that their challenge is not to the election or the sufficiency of the ballot, but to the proposed expenditure of proceeds of the bonds authorized in the election for constructing sewer lines, lift stations, the removal of existing lift stations, pressure mains, and other such facilities which are not necessary for the construction of a new sewage treatment plant at the location of the existing plant and the connection of it to the existing sewer system.

■ In reviewing this issue, we are cognizant of the fact that the voters must be informed of the purpose of the creation of a proposed debt. *State ex rel. City of Breckenridge v. Thompson,* 322 Mo. 323, 15 S.W.2d 346, 347 (1929). *Meyers v. Kansas City,* 323 Mo. 200, 18 S.W.2d 900 (1929), is a significant case in this area. It involved a suit to prevent Kansas City from using a portion of monies derived from bonds which were approved by the voters "for the construction, improvement and equipment of municipal docks and wharves." The proposition did not specifically include the purchase of land to construct docks and wharves. The court held that the purchase of land for the docks and wharves was not an authorized use of the bond proceeds, saying:

> [The proposition submitted to the voters] contains no grant of power, other than that clearly comprehended within the words employed. There is no room, therefore, for the application of the doctrine of implied powers. This is especially true of a grant of powers to a corporation, municipal or otherwise, and *if any doubt arises out of the use of the words employed, it is to be resolved in favor of the public and in limiting the expenditures of the appropriation to the express terms for which it was made.... Another general rule in the construction of statutes, applicable as*

*well to municipal ordinances, is that acts of the character here under review are to be strictly construed.* (Emphasis added.)

*Id.* at 901.

*Meyers* was cited with approval in *Armstrong v. Adair County,* 990 S.W.2d 64 (Mo.App. W.D.1999), a case in which the county commissioners passed an order imposing a sales tax "for law enforcement purposes at the rate of ½ of one percent (.005%) for providing law enforcement services ..., ¼ of one percent to be set aside in a separate fund for future expansion of all the Dentention [sic] Center ..." *Id.* at 65. The issue was whether the county could use bond proceeds to build a new jail on a different site than the current detention center. The court held that it could not, and in doing so said that "the express mention of one thing implies the exclusion of another," and "where ... special methods are expressly prescribed for the exercise of power, other ... procedures are excluded." *Id.* at 66. It also said:

> By referring specifically to future expansion of the detention center, the commissioners' proposition could have caused a cautious reader to conclude that "law enforcement services" referred to something other than services related to the detention center. Their express mention of expanding the jail implied exclusion of building a new jail from the term "law enforcement services."

*Id.* It also said that the governing body's intention could be determined by presuming that it intended the plain and ordinary meaning of the words used, and that the plain and ordinary meaning of "expansion" does not connote enlarging a jail by building a new one on a different site. *Id.*

■ The above cases, together with the principles that the people's money is not to be spent in a manner other than authorized by an appropriation law, and that appropriation acts must be strictly construed, *State ex rel Teasdale v. Spainhower,* 580 S.W.2d 303, 306 (Mo. banc

1979), lead us to the conclusion that the bond issue approved by the voters here must be used only for the construction of a new treatment plant at the location of the existing one, and for such other purposes as are necessary to connect it to the existing sewer system.

In arguing that the ballot language was sufficient to permit expenditures for the improvement and extension of the existing sewer system, in addition to the construction of a new treatment plant at the location of the existing one, Defendants point out that § 250.070 [1] contains the form of a ballot for submission of the question of issuance of revenue bonds. It provides that the question of the issuance of bonds for acquiring, constructing, improving or extending any sewerage system payable from the revenues to be derived from the operation of the system shall be submitted in the following form: "Shall .... (name of city, town, village, or district) issue revenue bonds in the amount of .... dollars?" They argue that "[I]t necessarily follows that respondents were not required in the instant case to provide the citizens of Republic with a detailed description of the anticipated uses of the proceeds from the sale of the revenue bonds." In the instant case, however, Respondents chose to provide more specifics in the ballot proposition. Having done so, we cannot conclude that the words they chose were of no significance.[2]

Defendants also point out that under § 250.010.2(1) a "sewerage system" is defined, for the purposes of Chapter 250, as including "[s]ewerage systems and sewerage treatment plants, with all appurtenances necessary, useful, and convenient for the collection, treatment, purification and disposal in a sanitary manner of the liquid and solid waste, sewage, and domestice and industrial waste of any such municipality; ..."

Plaintiffs acknowledge the definition of "sewerage system" in § 250.010.2(1) and also the general nature of the statutorily approved ballot language. They argue that had the ballot in question stopped with the words "cost of acquiring real estate and rights-of-way, constructing, extending and improving the combined waterworks and sewage system of the city," it would have been a valid contention that the ballot authorized expenditure of the funds for a collection system as well as a treatment plant. However, by the addition of the words "by constructing a new sewerage treatment plant, at the location of the existing treatment plant, and appurtenances," Plaintiffs argue that the authorization was limited to that specific purpose. In other words, they say a plain reading of the ballot results in the conclusion that the bond proceeds may be used for "acquiring real estate and rights-of-way, constructing, extending and improving the combined waterworks and sewerage system" only to the extent it is related to the construction of a new sewerage treatment plant at the location of the existing treatment plant. We agree.

The plain and ordinary meaning of the ballot proposition approved by the voters was that the money was to be spent to construct a new sewerage treatment plant at the location of the existing one, and that the bond proceeds could also be used for acquiring real estate and rights-of-way, constructing, extending and improving the combined waterworks and sewerage system as necessary to construct and connect the new plant to the existing system. In other words, a plain reading of the proposition would lead one to conclude that the object of the proposal was the construction of a new treatment plant, and that the acquiring of real estate and rights-of-way, and the construction, extension and improvement of the combined waterworks

---

1. All references to statutes are to RSMo 1994 unless otherwise indicated.

2. There is no contention in this case that the bond election was invalid because the statutorily approved language contained in § 250.070.2 was not used in the ballot.

and sewerage system to be authorized was that which was necessary for that object.

In so concluding, we note that the preposition "by" is defined as "[w]ith the use of; through," "[t]o the extent of," or "[t]hrough the agency or action of." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1978). The same source states that a synonym for "by" is "through" and that the preposition "by" indicates the agency or means by which something is accomplished. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) defines "by" as "through the means or instrumentality of," "through the direct agency of," "through the medium of," or "through the work or operation of," and that it is "used as a function word to indicate something that forms an accompanying setting or condition . . . or that constitutes a manner . . . often with an added sense of means." For the ballot proposition to have had the meaning espoused by Defendants, the voter would have had to ignore the important word "by." To do so is to ignore the plain and ordinary reading of the words used.

In reaching this conclusion we do not ignore Defendants' contention that they intended the ballot to authorize the bond proceeds to be used both for the construction of the new treatment plant and for the extension and improvement of the collection system generally. We do not doubt that they intended the use of the bond proceeds to be more all-encompassing than the result which we reach here. Nevertheless, we must acknowledge and give effect to the importance of the choice of words on a ballot proposition in a bond election as the court did in *Armstrong* where it said "[w]e cannot escape, however, the constrictors of law which bind the commissioners to the words they chose for their order." 990 S.W.2d at 67.

Respondents cite the cases of *Kansas City v. City of Raytown*, 421 S.W.2d 504 (Mo. banc 1967), *Palmer v. City of Liberal*, 334 Mo. 266, 64 S.W.2d 265 (1933), and *Thompson*, 322 Mo. 323, 15 S.W.2d 346. These cases do not salvage the case from the principles discussed above. They stand for the proposition that the bond proposals under consideration in those cases were not required to specify particular projects or give the specifics for which the bond proceeds would be used. In fact, the court in *Kansas City v. City of Raytown* acknowledged that usually bond proposals for sewer construction are in general language and leave to legislative discretion the exact location and particular projects upon which the funds will be expended. 421 S.W.2d at 511. This does not equate, however, to the situation which we have here where the ballot proposition did specify the purpose for which the bond proceeds would be used. Were we to hold that the language of this ballot did not restrict the use to which the bond monies could be placed because only general language is required, a municipality could submit bond issues to the voters saying that the proceeds would be used for one purpose and then apply them to another. Instead, we think the better and more logical approach is to say that general ballot language, such as that permitted by § 250.070.2, leaves greater discretion in the governing body about the manner in which bond proceeds may be spent than does ballot language such as that employed here which specifically defines the project to which those proceeds will be applied.

Respondents also argue that the use of the word "appurtenances" on the ballot provides sufficient specificity to permit use of the bond proceeds for the general collection system of Republic. In doing so they argue that the rights-of-way, extensions and improvements to the collection system are the "appurtenances" referred to in the ballot. Such an interpretation is strained and is contrary to the general principle enunciated by our Supreme Court that if any doubt arises from the words used, it is to be resolved in favor of the public and in limiting the expenditures to the express terms employed. *Meyers,*

18 S.W.2d at 901. Supportive of this result is the fact that "appurtenances" was used in the ballot after, and apparently in connection with the words "by constructing a new sewerage treatment plant at the location of the existing treatment plant."

We conclude that the proceeds of this bond election may only be used for the purpose of constructing a new sewerage treatment plant at the location of the existing treatment plant, and such acquisition of real estate and rights-of-way, construction, extension, and improvement of the combined waterworks and sewerage system as shall be necessary to accomplish the construction of the new treatment plant and connecting it to the existing sewer system of Republic. The judgment of the trial court is reversed and the case is remanded with directions to enter a judgment consistent with this opinion.[3]

---

**3.** Defendant's Motion to Dismiss Appeal is     denied.