State of Missouri, at the Relation of The Curators of the University of Missouri, Relator, v. Allen McReynolds, as President of the Board of Curators of the University of Missouri.— No. 39885.—193 S. W. (2d) 611.

Court en Banc, April 11, 1946.

*Orrin B. Evans* for relator.

*John H. Flanigan* for respondent.

DOUGLAS, J.—The Curators of the University of Missouri, a public corporation, bring this original proceeding in mandamus to test its authority to issue $2,732,000 of Dormitory Revenue Bonds. The proceeds are to be used for building dormitories.

The University of Missouri was created by the General Assembly in 1839. Laws of 1838, p. 173. A fund designated as the "seminary fund" was established by the act. This fund was to receive the proceeds of the sale of seminary lands and after the principal reached the sum of $100,000 the income was to be applied for the support of the University. The original buildings were financed and for many years maintained solely from the income from the seminary fund and by gifts, subscriptions and student fees. These funds were paid directly to the curators who had control and management of them. The first funds by way of appropriation by the Legislature came in 1867 and then not for support but to reimburse the University for $10,000 damage to its property because of military occupation during the war between the States. It appears ▮▮▮ that it was not until 1879 that the Legislature made its first general appropriation to the University.

The first constitutional provision for the government of the University is found in the Constitution of 1875 (Art. XI, Sec. 5) as follows: "The government of the State University shall be vested in a Board of Curators, to consist of nine members, to be appointed by the Governor, by and with the advice of the Senate." The same provision was carried over into the Constitution of 1945, Art. IX, Sec. 9(a).

The General Assembly has vested the University with the express powers, among others, to sue and be sued; to take, purchase, sell, and otherwise dispose of lands and chattels; to condemn and appropriate real estate and other property. Sec. 10783, R. S. 1939. The statutory duty is placed on the curators "to erect and continue thereon [the site of the University] all edifices designed for the use and accommodation of the officers and students of the University." Sec. 10810, R. S. 1939.

Chiefly because of post war conditions the enrollment at the University will jump from a low of 1938 students in 1943 to an estimated 6,600 in the Fall of this year and then to an estimated 8,000 or more each year for the next decade. Housing for students is overcrowded and inadequate. There are dormitory facilities now available for only 158 men and 158 women. Auto-trailers have been installed as an emergency measure to house married veterans. To remedy the situation and provide proper rooming and boarding fa-

cilities the curators propose to erect on the campus of the University at Columbia dormitories and dining rooms to accommodate 1850 men and 550 women and 250 married students, and on the campus of the School of Mines and Metallurgy at Rolla dormitories and dining rooms for 300 men, all at a total cost of $5,464,000. The curators are looking to the Legislature for an appropriation of one-half that sum and propose to issue Dormitory Revenue Bonds in the amount of $2,732,000 to raise the balance. The bonds will mature in 20 years unless called for redemption. They will bear 3% interest payable semi-annually. They are declared to be fully negotiable. The bonds provide they are not an indebtedness or general obligation of the State of Missouri, or of the University of Missouri, or of the Curators of the University of Missouri. The principal and interest of the bonds ''are payable solely and only from the net income revenues derived from the operation of said dormitories and dining room facilities'' and a lien is imposed against such revenue.

The question for decision is whether the curators have the power to borrow money for building the dormitories and issue such revenue bonds as security.

This State has long followed the rule announced in Dillon, Municipal Corporations (1911) sec. 237, so long that it has become firmly established here. ''It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.''

In considering an implied power to borrow money and issue bonds such rule should be read in the light of the taxing power conferred upon municipal corporations and the power to use funds raised by taxes for the payment of bonds. The rule no doubt sprang from the desire and perhaps sense of duty on the part of the courts to protect the people of a community from needless debts, extravagant expenditures and obligations imposed by fraud resulting in an overbearing tax load. The rule applicable to private corporations is far more liberal as to implied powers. In the present case there is no obligation to pay the Dormitory Revenue Bonds from funds appropriated by the Legislature from tax revenues.

The curators state they have no express power to issue revenue bonds for money borrowed. Have they the implied power? We are convinced they have in this instance.

The curators have not only the express power but are directed by law to erect and maintain buildings for the use and accommodation of the students. They have determined additional dormitories and dining rooms are required for the health and welfare of the students. They have sole control and custody of the fees received from dormitories and dining rooms. State ex rel. Thompson v. Board of Regents, 305 Mo. 57, 264 S. W. 698. Such fees are expressly excepted by statute from those funds required to be placed in the State Treasury. Sec. 13051, R. S. 1939. The power of the curators to accumulate such fees and when sufficient to build dormitories could not be questioned. They built the original buildings and operated them with funds not received through legislative appropriations. Therefore, we believe that while the curators may have no general implied power to borrow money and issue securities, still it may be fairly implied from their express powers that under the particular circumstances they have the power presently to capitalize such future accumulation of fees even though they must borrow to do so. By borrowing by the method contemplated the curators do not create a general obligation, only a limited one. The only funds pledged are those to be realized from the operation of the particular properties to be built out of the proceeds of the bonds. There is no pledge of funds to be ultimately realized from tax revenues.

Although the Legislature has specifically authorized cities to issue revenue bonds, the fact it has not given the curators such express power does not prevent the implication of such power. The broad powers historically exercised by the curators without specific legislative authority or appropriations present a different situation from an ordinary municipal corporation depending entirely upon taxation for its support and with powers rigidly limited by statute or charter.

This is not a novel question in other jurisdictions. A number of public institutions of learning have been held to have the implied power to issue revenue bonds, usually in conjunction with Federal aid, to build dormitories. See Fanning v. University of Minnesota, 183 Minn. 222, 236 N. W. 217; State College Development Assn. v. Nissen, 66 S. D. 287, 281 N. W. 907; State v. Regents of University System of Georgia, 179 Ga. 210, 175 S. E. 567; Caldwell v. Board of Supervisors of Louisiana State University, etc., 176 La. 825, 147 So. 5. To the contrary see Alabama College v. Harman, 234 Ala. 446, 175 So. 394; and same v. same, 235 Ala. 148, 177 So. 747. It has also been held that municipal revenue bonds may be issued in the absence of express statutory authority therefor. Fjeldsted v. Ogden City, 83 Utah 278, 28 P. (2d) 144; Williams v. McIntosh County, 179 Ga. 735, 177 S. E. 248. By issuing the Dormitory Revenue Bonds the curators are merely adopting a modern device to implement the powers they have long and properly exercised.

■ The remaining question is whether the limitation imposed on the curators by Section 10791, R. S. 1939 prevents their issuing the Dormitory Revenue Bonds. That section states: ". . . and in no instance shall the board of curators create any indebtedness in any one year above what they can pay out of the annual income of said year." That provision was adopted in 1877 (Laws 1877, p. 271) after the General Assembly was expressly directed for the first time by the Constitution to aid and maintain the University. Constitution of 1875, Art. XI, Sec. 5. Prior to that time, as pointed out above, the University was supported by the income from the Seminary Fund, subscriptions and fees. By the limitation of Section 10791 the General Assembly evidently intended that the curators should not incur an indebtedness to be paid out of any future appropriation of State funds raised by taxation. Moreover, it is the established rule in this and other jurisdictions that the obligation created by revenue bonds payable out of the income to be realized from the particular property acquired with the proceeds of the bonds, does not constitute a debt or indebtedness as those terms are used in constitutional and statutory limitations. State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367; City of Springfield v. Monday, 353 Mo. 981, 185 S. W. (2d) 788 and cases and authorities cited therein. Therefore, the limitation of Section 10791 does not prohibit the curators from issuing the Dormitory Revenue Bonds as they do not create an indebtedness in the sense which is prohibited.

■ It is our conclusion that the curators have full power and authority to issue the Dormitory Revenue Bonds. Accordingly, our peremptory writ of mandamus should issue.

It is so ordered. All concur.