The STATE of Missouri at the relation of the CURATORS OF the UNIVERSITY OF MISSOURI, Relator,

v.

Robert NEILL, as President of The Board of Curators of The University of the State of Missouri, Respondent.

No. 51699.

Supreme Court of Missouri, En Banc.

Jan. 10, 1966.

Neill, the president of the Board of Curators, to execute revenue bonds which the Board proposes to issue for the construction of parking facilities for motor vehicles on the campus of the University of Missouri at Columbia, which bonds are to be paid, both principal and interest, solely from revenues derived from the operation of the parking facilities. The return of the respondent admits all facts alleged in the petition for the writ. The parties have also filed a stipulation of agreed facts. From these sources the essential facts will be stated.

In keeping with the general trend, the enrollment of the University of Missouri has increased greatly in recent years. In addition to the sites in Columbia and Rolla, new campuses have been established in St. Louis and Kansas City. On June 9, 1965, the Curators adopted a resolution containing many recitals including a table showing the increased enrollment at the various campuses over a period of years. The enrollment figures for the campus in Columbia, with which we are immediately concerned, are: 8,983 in 1955; 11,176 in 1960; and 15,440 in 1964; the estimated enrollment for 1970 is 22,000. The resolution further finds and determines that, by reason of the increased enrollment, the additional persons required for the faculty and staff, and the increased use of motor vehicles by such persons, it is immediately necessary and essential to provide adequate parking space for motor vehicles; that the general assembly has not appropriated funds for such parking facilities, and the Curators do not have sufficient funds for that purpose; that the only feasible method of defraying the cost of such parking facilities is to issue bonds which shall not be general obligations of the State of Missouri or the Curators, but shall be payable solely from revenue produced by the operation of the parking facilities. The resolution then calls on the administrative officials of the University to submit to the Curators recommendations and definitive plans for carrying out the purposes and intent of the resolution.

Paul M. Peterson, Jackson A. Wright, T. Richard Mager, Columbia, for relator.

Marion S. Francis, St. Louis, for respondent.

STORCKMAN, Chief Justice.

This is an original proceedings for a writ of mandamus brought by the Curators of the University of Missouri to require Robert

Thereafter, on the same day, the Curators adopted another resolution which approved plans and specifications submitted to them for the establishment of additional parking facilities on the campus of the University of Missouri at Columbia and estimating the cost thereof, directed the issuance of parking facility revenue bonds of the Curators of the University of Missouri in the principal amount of four hundred thousand dollars ($400,000) for the purpose of paying such estimated costs, fixed the date, maturities, form, and other details of said bonds, and made covenants for the payment of said bonds and the interest thereon from the revenues to be derived from the operation of said parking facilities. The plans presented to the Curators provided for additional parking facilities having a capacity of 2,649 motor vehicles. The cost of planning, designing, improving and equipping the parking facility was $440,000. The amount the Curators had available to apply on the cost was $40,000. The Curators found and determined that an emergency existed and that the future welfare of the University required the immediate establishment of the parking facility. The resolution then authorized the establishment of the facility at a location specified and the issuance of revenue bonds in the sum of $400,000. The resolution sets out the nature, terms and conditions of the bonds which need not be recited here since there is no challenge to the validity of the bonds in that respect.

The petition for the writ of mandamus alleges that Bond No. 1 was prepared and presented to the respondent as president of the Board of Curators for his signature as provided in the resolution and that the respondent refused to execute the bond.

The stipulation of agreed facts further shows that the number of motor vehicles registered on the Columbia campus in 1955 was 3,312, in 1960 was 7,382, in 1964 was 9,532, and the estimated number in 1970 is 13,000. The stipulation also states that: "The area of the campus at Columbia and the distances separating living facilities from academic facilities are such as to make necessary the use of mechanical means of transportation. This situation exists alike with respect to faculty, students, and staff members who are compelled to live at a distance from the campus because nearer living facilities are not available. The most commonly available and used means is the motor vehicle. Understandably, this produces a problem of providing parking facilities for such vehicles on or near the campus and the educational facilities thereon. No local public transportation system is currently in operation in Columbia." During each year the University holds many seminars, conferences, educational meetings and athletic events which are attended by large numbers of persons, most of whom come to the University by motor vehicle and require parking facilities therefor. The University hospital and clinics also bring thousands of persons to the campus annually for treatment or to visit patients. Most of these persons come by motor vehicle and require parking facilities. As of January 1, 1965, there was available on the campus at Columbia approximately 3,000 spaces for parking motor vehicles. Since then approximately 450 of said spaces have been lost by reason of the construction of new buildings. It is expected that 1,200 spaces will be lost by reason of the construction of the United States Veterans' Hospital in the early summer of 1966. Because of the lack of available funds, the Curators have been able to provide only approximately 100 parking spaces to replace the spaces so lost and to meet the increasing need for such facilities. New University facilities under construction and which will come into operation within the next year will require approximately 1,200 additional parking spaces. The stipulation concludes with the statement that: "For more than 25 years Relator has been providing parking facilities on its campuses at Columbia and at Rolla, and is now providing parking facilities on all four of its campuses. The need for providing such facilities has thus been

recognized by Relator and unchallenged by anyone over a long period of time."

The primary questions involved are whether the Curators have authority under the Constitution and statutes to construct the parking facility in question and, if such power exists, whether the Curators can borrow money and issue revenue bonds for that purpose. The Curators contend that they have constitutional power supplemented by statutes to perform both of these functions. The constitutional provision, § 9(a) of Art. IX of the 1945 Constitution, V.A. M.S., provides that: "The government of the state university shall be vested in a board of curators consisting of nine members appointed by the governor, * * *." The following section, 9(b), provides that: "The general assembly shall adequately maintain the state university and such other educational institutions as it may deem necessary."

The general assembly, in recognition of the broad grant of constitutional power, has also provided in § 172.010, RSMo 1959, V.A.M.S., that "the government" of the University shall be vested in the Board of Curators. Section 172.020 incorporates and creates the University as "a body politic" under the name, "The Curators of the University of Missouri", and, among other things, grants this public corporation the power to purchase and sell lands and chattels, and to condemn property for its public purposes.

Section 172.260 provides that: "It shall be the duty of the curators to provide for the protection and improvement of the site of the university of the state of Missouri, as selected and established by law; to erect and continue thereon all edifices designed for the use and accommodation of the officers and students of the university, and to furnish and adapt the same to the uses of the several departments of instruction." Thus, "the government" of the University is committed to the Curators both by the Constitution and the statutes and it is the Curators' duty "to provide for the protection and improvement of the site of the university" and "to erect and continue thereon all edifices" for the use of the officers and students of the University.

In determining the meaning and application of statutory provisions, this court must ascertain the legislative intent from the words used, if that is possible, and in doing so give to such words their plain and ordinary meaning so as to promote the object and manifest purpose of the statutes. Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, 25 [3].

The Constitution in general is subject to the same rules of construction as other laws with due regard being given to the broader scope and objects of the Constitution as a charter of popular government, and the intent of the organic law is the primary object to be attained in construing it. State ex rel. Jones v. Atterbury, Mo., 300 S.W.2d 806, 810 [2].

The term "government" has been defined as the act or process of governing, authoritative direction or control, and the office, authority or function of governing. To govern is to control the workings or operation of, and to determine, guide and regulate. Webster's Third New International Dictionary. These definitions have been approved by this court with respect to the government of the University. State ex rel. Heimberger v. Board of Curators, 268 Mo. 598, 188 S.W. 128.

The word "improvement" has for one of its specific definitions: A permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs. Webster's Third New International Dictionary. Missouri cases have judicially defined the term in the same manner. See Allen v. Jackson County Savings & Loan Assn., 232 Mo.App. 1098, 115 S.W.2d 7, 9 [4], State ex rel. City of Breckenridge v. Thompson, 322 Mo. 323,

15 S.W.2d 346, 347 [2], R. Williams & Co. v. Farm & Home Savings & Loan Assn., 217 Mo.App. 554, 272 S.W. 1006, 1009, and Dugan Cut Stone Co. v. Gray, 114 Mo. 497, 21 S.W. 854. Among the definitions of "edifice" also used in § 172.260 is a building or structure.

The Curators are more than a mere regulatory agency. It is the clear intent of the Constitution and statutes to confer on the Curators the authority to select sites on which to carry out the functions of the University and to acquire real estate for such purposes by purchase or condemnation. It is also clear that the Curators are authorized to construct improvements on the real estate constituting the site of a University function. In fact such authority is spelled out as a *duty* of the Curators by § 172.260. For the possible origin of this grant of power and imposition of duty, see Constitution of Missouri 1820, Art. VI, § 2, V.A.M.S., Vol. 1, p. 91, Laws 1889, p. 265, and Laws 1909, p. 889.

It is too late in the motor age to contend successfully that parking facilities are not a necessary adjunct of the proper use of improved real estate. One does not have to travel far to see their inevitable presence at modern shopping centers, factories, schools, churches, apartments and even private residences. A place to park an automobile is indispensable to its use. The larger businesses and institutions find it necessary to provide parking facilities for the persons with whom they deal since streets are no longer adequate or available for that purpose.

■ It is an admitted fact that for more than twenty-five years the Curators have been providing parking facilities on its campuses in Columbia and at Rolla and more recently on the campuses established at St. Louis and Kansas City. The administrative interpretation given a constitutional or statutory provision by public officers charged with its execution, while not controlling, is entitled to consideration, especially in case of doubt or ambiguity.

Foremost Dairies, Inc., v. Thomason, Mo., 384 S.W.2d 651, 659 [6]; England v. Eckley, Mo., 330 S.W.2d 738, 743–744 [6]; Rathjen v. Reorganized School Dist. R–II, 365 Mo. 518, 284 S.W.2d 516, 526 [22]. The parking facility in question is a structure or improvement which the Curators are authorized to construct on University property. Rathjen v. Reorganized School Dist. R–II, 365 Mo. 518, 284 S.W.2d 516, 527 [27].

■ Our next inquiry concerns the power of the Curators to issue revenue bonds for the money necessary to defray the cost of constructing the parking facility. The respondent contends that the Curators have no express or implied power to issue revenue bonds for this purpose. This contention must be denied on the authority of State ex rel. Curators of University of Missouri v. McReynolds, 354 Mo. 1199, 193 S.W.2d 611, a decision of this court en banc, which held that the Curators had implied power to issue revenue bonds for money borrowed to build dormitories and dining room facilities to take care of increased enrollment at the University. Regarding this aspect of the case, the McReynolds opinion states:

"* * * while the curators may have no general implied power to borrow money and issue securities, still it may be fairly implied from their express powers that under the particular circumstances they have the power presently to capitalize such future accumulation of fees even though they must borrow to do so. By borrowing by the method contemplated the curators do not create a general obligation, only a limited one. The only funds pledged are those to be realized from the operation of the particular properties to be built out of the proceeds of the bonds. There is no pledge of funds to be ultimately realized from tax revenues.

"* * * The broad powers historically exercised by the curators without specific legislative authority or appropriations present a different situation from an

ordinary municipal corporation depending entirely upon taxation for its support and with powers rigidly limited by statute or charter.

"* * * By issuing the Dormitory Revenue Bonds the curators are merely adopting a modern device to implement the powers they have long and properly exercised." 193 S.W.2d at 613.

 The respondent further contends that the Curators are precluded from issuing the revenue bonds by that portion of § 172.250 which provides that the Board of Curators shall not create in any one year any indebtedness above what it can pay out of the annual income of that year. This contention must also be denied on the authority of State ex rel. Curators v. McReynolds wherein it was held that the obligation created by revenue bonds payable out of income to be realized from the particular property acquired with the proceeds of the bonds is not a "debt" or an "indebtedness" within the scope of constitutional and statutory limitations. 193 S.W.2d 611, 613 [7]. See also Petition of Board of Public Buildings, Mo., 363 S.W. 2d 598, 605 [1].

 Chapter 176, RSMo 1959, V.A.M.S., which deals with revenue bonds of educational institutions, was approved July 3, 1946, shortly after the McReynolds decision was rendered. See Laws of Missouri 1945, pp. 1715, 1720. The respondent contends that the Curators are precluded from issuing revenue bonds by reason of the fact that the projects included in Chapter 176 specify dormitories, dining room facilities and social and recreational buildings. The chapter covers educational institutions in addition to the University. There is no provision in Chapter 176 or elsewhere purporting to prohibit the Curators from issuing revenue bonds in the manner approved by the McReynolds case and as here proposed. In view of the "broad powers historically exercised by the curators without specific legislative authority" (193 S.W.2d 613), we will not imply that a restriction is intended by Chapter 176 when none is expressed.

 Further the respondent says the writ should be denied because the Constitution imposes on the general assembly the duty to maintain the University. As demonstrated in the McReynolds case, the University has had support from private and public grants, and tuition and fees, and there are no constitutional or statutory provisions designed to limit the University to appropriations made by the general assembly. In fact the contrary appears. This contention is also denied.

We have considered all questions presented and decided them adversely to the respondent. Accordingly it is ordered that the peremptory writ of mandamus be issued.

All concur except FINCH, J., not participating.