STATE of Missouri ex inf. John C. DAN-FORTH, Attorney General, Relator,

William C. Phelps, Lieutenant Governor, Intervenor-Relator,

v.

William J. CASON, President Pro Tempore of the Missouri Senate, Respondent.

No. 58393.

Supreme Court of Missouri, En Banc.

Nov. 30, 1973.

Dissenting Opinion Dec. 12, 1973.

On Motion for Clarification, April 8, 1974.

John C. Danforth, Atty. Gen., D. Brook Bartlett, First Asst. Atty. Gen., C. B. Burns, Jr., Asst. Atty. Gen., Richard E. Vodra, Richard S. Brownlee III, Asst. Attys. Gen., Jefferson City, for relator.

William H. Leedy, Kansas City, David Collins, Macon, for intervenor-relator.

Ronald R. McMillin, Cullen Coil, Jefferson City, for respondent.

ORIGINAL PROCEEDING IN QUO
WARRANTO

FINCH, Judge.

On June 15, 1973, the last day of the First Session of the 77th General Assembly of Missouri, Lieutenant Governor William C. Phelps, in his capacity as ex officio President of the Missouri Senate, presided over its morning session. After the noon recess, Senator William J. Cason, President Pro Tempore of the Senate, acting pursuant to Senate Rule 11,[1] assumed the chair and refused to permit Lieutenant Governor Phelps to resume the position of presiding officer of the Senate, even though, as stipulated by the parties hereto, "Lieutenant Governor Phelps intended to and was available and able to preside over the Missouri Senate during the remainder of that day's session." Either Senator Cason or his designee thereafter presided over the Senate until its adjournment at midnight on June 15, 1973.

The ultimate question for decision herein is the constitutionality of Rule 11. The answer to that question depends on whether Art. IV, § 10,[2] which provides for a lieutenant governor who shall be ex officio president of the senate, confers on the lieutenant governor the right to preside over the senate, or whether Art. III, § 18,[3] which authorizes each house of the legislature to adopt rules for its own proceedings, confers on the senate the right, by rule, to provide that its president pro tempore may assume the chair at will and thereby displace the lieutenant governor as presiding officer of the senate. The par-

ties agree that the only issue to be decided is the right of the lieutenant governor to preside, and that this case does not involve a determination of the powers the lieutenant governor would have as presiding officer if it be determined that he does have the right to serve as presiding officer of the senate. We hold, for reasons subsequently discussed, that Rule 11 is unconstitutional.

On the afternoon of June 15, 1973, the Attorney General at the relation of the Lieutenant Governor filed a petition for writ of prohibition in this Court seeking to prevent Senator Cason, as President Pro Tempore, from interfering with the right of the Lieutenant Governor to preside over sessions of the Senate. After reviewing the petition and suggestions in support thereof, the Court made the following order:

"(4:58 P.M.) Relator's original petition for writ of prohibition, filed on or about 3:30 P.M., this date, wherein this Court is asked to review and resolve novel and important questions prior to midnight of this date, is denied because the Court concludes it cannot in this limited time give to these issues the consideration warranted for final decision on the merits."

In addition to the lack of sufficient time to hear from both parties, to do necessary research and to deliberate, a factor influencing the decision of the Court was the fact that the Attorney General then had outstanding an opinion in which he had held that a similar Senate Rule adopted in 1969 was valid.[4] The then Lieutenant Gover-

---

1. Senate Rule 11 provides as follows:
 "The president shall preside over the senate at the pleasure of the president pro tem who may assume the chair at will, or the president pro tem may designate some other senator to preside."

2. All constitutional references are to 1945 Mo. Const., V.A.M.S., unless otherwise indicated.

3. Art. III, § 18, contains the following provisions pertinent to the issue here presented:

"Each house shall appoint its own officers; * * * may determine the rules of its own proceedings, except as herein provided; * * *."

4. In 1969 the Senate adopted Rule 10, which provided as follows:
 "Rule 10. The Lieutenant-Governor shall preside over the Senate at the pleasure of the President pro tem who may assume the chair at will and the Lieutenant-Governor shall assign bills to the standing committees of the Senate subject to approval or reas-

nor, William S. Morris, requested an opinion from the Attorney General as to the validity of that rule. On January 20, 1969, the Attorney General held that Rule 10 was constitutional. This opinion was withdrawn by the Attorney General on June 18, 1973, three days after the petition for writ of prohibition was filed.

Subsequently, respondent instituted a declaratory judgment suit in the Circuit Court of Cole County for the purpose of determining the constitutionality of Senate Rule 11, thereby settling for the future the question of whether the lieutenant governor has a constitutional right to serve as presiding officer of the senate or whether, under its rule-making authority, the senate may provide for replacement of the lieutenant governor as presiding officer at the will of the senate or its president pro tempore. Thereafter, this proceeding was instituted by relator in this Court. While it is one in the nature of quo warranto seeking an order ousting respondent Cason from exercising rights, powers and privileges of the lieutenant governor as president of the senate, its ultimate objective also is to determine the constitutionality of Rule 11. In view of the desirability of resolving this question prior to the convening of the Second Session of the 77th General Assembly, the Court concluded to consider the question in this proceeding rather than to await an appeal in the declaratory judgment action. On application, the Lieutenant Governor was permitted to intervene. The case was submitted on the pleadings and an agreed statement of facts.

The office of lieutenant governor is established by Art. IV, § 10, which provides as follows:

"There shall be a lieutenant governor who shall have the same qualifications as

the governor and shall be ex officio president of the senate. In committee of the whole he may debate all questions, and shall cast the deciding vote on equal division in the senate and on joint vote of both houses." [5]

What is the effect of the provision in Art. IV, § 10 that the lieutenant governor shall be ex officio president of the senate? What do the words "president of the senate" mean?

█ This Court has recognized that in the construction of constitutional provisions it should undertake to ascribe to words the meaning which the people understood them to have when the provision was adopted. This was expressed in State ex rel. Heimberger v. Board of Curators of University of Missouri, 268 Mo. 598, 188 S.W. 128 (banc 1916), wherein the Court undertook to interpret the meaning of the constitutional provision which bestowed the "government" of the state university on a board of curators. In deciding that question, the Court quoted from a recognized text on constitutional interpretation which emphasized reliance on the natural and ordinary meaning of words, in this language, 188 S.W. l. c. 130:

"'The thing we seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was

---

signment of such bills by the President pro tem. * * * "

5. Almost identical provisions appeared in the earlier Constitutions of 1820, 1865 and 1875. Each provided for a lieutenant governor, provided that by virtue of his office he should be president of the senate, and then

provided, as in the present section, that he could debate on all questions in committee of the whole, and when there is an equal division he shall cast the deciding vote in the senate and also in joint vote of both houses. See 1820 Const., Art. IV, § 15; 1865 Const., Art. V, § 13; and 1875 Const., Art. V, § 15.

intended to be conveyed. That which the words declare is the meaning of the instrument, and neither courts nor Legislatures have a right to add to or take away from that meaning.' Cooley's Const. Limitations (7th Ed.) p. 91. 'In interpreting clauses we must presume that words have been *employed in their natural and ordinary meaning.* As Marshall, C. J., says: The framers of the Constitution and the people who adopted it "must be understood to have employed words in their natural sense, and to have intended what they have said." This is but saying that no forced or unnatural construction is to be put upon their language; * * *.' Cooley's Const. Limitations (7th Ed.) pp. 92, 93."

The same standard of interpretation was expressed in Household Finance Corporation v. Schaffner, 356 Mo. 808, 203 S.W.2d 734, 737 (banc 1947), as follows:

"* * * The only way we can determine what meaning was conveyed to the voters by the provision is to determine what it means to us, giving the words used their ordinary and usual meaning. * * *"

Subsequent cases announcing a similar rule include Rathjen v. Reorganized School District R–II of Shelby Co., 365 Mo. 518, 284 S.W.2d 516 (banc 1955), and State ex rel. Curators of the University of Missouri v. Neill, 397 S.W.2d 666 (Mo. banc 1966).

■ In undertaking to ascertain the ordinary, usual and commonly understood meaning of words, we look first to dictionary definitions. That is what the court did in the Heimberger, Rathjen and Neill cases, supra. In so doing, we look to those definitions applicable to the context in which the word is used. Hence, we look particularly for definitions relating to president of the senate or of a legislative body.

Webster's New International Dictionary (2nd Ed.), published in 1934, includes the following definition of the word "president":

"1. One who presides; a ruler; governor; sovereign; head; now, one who is elected or appointed to preside, or control the proceedings of others. Specif.: a. A presiding officer of a governmental body, as of an advisory council, of an administrative board, or of a legislative assembly * * *."

In Webster's Third New International Dictionary, published in 1961, appears the following:

"4a: the presiding officer of a governmental body (as an advisory council, administrative board, or legislative assembly) (the constitution * * * makes the vice president of the U[nited] S[tates] [the president] of the senate) * * *."

The Oxford English Dictionary, published in 1933, includes these definitions:

"2. The appointed or elected head of a temporary or permanent body of persons, who presides over their meetings and proceedings.

* * * * * *

"4. The officer in whom the executive power is vested in a modern republic * * *. Used first in the United States of America * * *. In [the] U[nited] S[tates] the name was app-[arently] continued from that of the president or presiding officer of the congresses of the separate states * * *."

Black's Law Dictionary (3rd Ed.), published in 1933, defines "president" as follows:

"One placed in authority over others; a chief officer; a presiding or managing officer; a governor, ruler, or director. The chairman, moderator, or presiding officer of a legislative or deliberative body, appointed to keep order, manage the proceedings, and govern the administrative details of their business." (This definition in unchanged in 4th Ed., published in 1968).

No Missouri appellate court has defined "president of the senate." However, numerous scholars of Missouri government, writing over a considerable span of years, have pointed out that the lieutenant governor is president of the senate and is its presiding officer. Obviously, we are not bound by these interpretations, but they are relevant to what people understood these titles to mean and hence what they intended when they voted on Art. IV, § 10. Examples of these writings are:

1) "The presiding officer for the Senate is the Lieutenant-Governor, * * *." Rader, School History of the State of Missouri 252 (1891).

2) "Lieutenant Governor.—A State officer chosen at the same time with the Governor, possessing the same qualifications and having the same term of office. He is presiding officer of the Senate, * * *." Conard, Ed., 4 Encyclopedia of The History of Missouri 62 (1901).

3) "Presiding Officers. * * * The presiding officer of the Senate is the Lieutenant-Governor, who is made such by the Constitution. To preside in his absence the Senators choose from their own number a President of the Senate *pro tempore*. The Speaker may be removed from his position by a majority of the Representatives at any time; the Lieutenant-Governor can be removed as presiding officer of the Senate only by being removed from his office as Lieutenant-Governor, that is, by impeachment." Rader, The Civil Government of the United States and the State of Missouri 188 (1904).

4) "Legislative Officers

"The Missouri Constitution provides that each house of the General Assembly shall appoint its own officers, and except for the presiding officers of the two houses, it leaves each house free to determine what officers it shall have.

\* \* \* \* \* \*

"Officers of the Senate

"The Constitution provides that the Lieutenant Governor shall be *ex officio* President of the Senate. In this capacity he presides over the sessions of the Senate, * * *.

\* \* \* \* \* \*

"Lieutenant Governor

"The office of Lieutenant Governor, although classed in the State Constitution as an executive office, has no real administrative duties or powers. The Lieutenant Governor exercises the powers of the Governor when the regular Governor is absent from the State or is physically unable to perform the functions of his office, but his regular duty is to preside over sessions of the State Senate." McCandless, Government, Politics and Administration in Missouri 31, 38, 176 (1949).

5) "Legislative Committees and Officers. * * * The presiding officer of the House is the Speaker, who is elected by the House. The Lieutenant-Governor, elected by the people, presides over the Senate." Gist, Morelock, Tucker, English, Eds., Missouri, Its Resources, People and Institutions 389 (1950).

6) "The Executive Department. * * * The *Lieutenant Governor* presides over the Senate * * *.

\* \* \* \* \* \*

"The Legislative Department. * * * The Senate. * * * The lieutenant governor is the presiding officer of the Senate." McClure and Potter, Missouri—Its Geography, History and Government 300, 305 (1951).

7) *"Officers of the Senate.* The Constitution invests the Lieutenant Governor with the title 'President of the Senate'. As such he presides over the body, * * *.

"At the beginning of the session the Senate elects a President Pro Tem to preside in the absence of the Lieutenant Governor." Karsch, Essentials of Missouri Government 51 (5th Ed. 1957).

8) "The presiding officer of the House of Representatives is the Speaker. He is elected by the members of the House from their own number. The presiding officer of the Senate is the Lieutenant Governor, who is elected by the people." Collins and Snider, Missouri, Midland State: A History 312 (Rev.Ed.1961).

9) "The position of the lieutenant governor is in many ways similar to that of the vice president of the United States. He presides over the senate, voting only in case of a tie." Karsch, Missouri Under the Constitution: A Textbook for High Schools 57 (1968).

10) "The Constitution makes the lieutenant governor the regular presiding officer of the Senate. The Senate also elects a 'president pro tempore' to preside when the lieutenant governor is absent." Karsch and Svoboda, The Missouri Citizen: History, Government, and Features of the State 226 (3rd Ed. 1970).

Books and articles devoted to the office of lieutenant governor are not plentiful, but a few which recite some of the history of the office and its characteristics are Davis, There Shall Also Be a Lieutenant Governor, Institute of Public Affairs, University of Texas (1967); Abernathy, Some Persisting Questions Concerning the Constitutional State Executive, Governmental Research Center, University of Kansas (1960); Walker, The Office of Lieutenant-Governor: Its Status and Future, 39 State Government 240 (1966); Isom, The Office of Lieutenant-Governor In The States, 32 American Political Science Review 921 (1938). See also Cushing, Law and Practice of Legislative Assemblies, 110–111 (1856). All of these support the proposition that the lieutenant governor, as president of the senate, serves as its presiding officer. We are cited to no textbooks or treatises which express a contrary view.

A governmental structure in which a lieutenant governor is the president of the upper house of the legislature and serves as its presiding officer has been and is characteristic of a majority of the states in this nation. New York was the first state to so provide. Its influence on the Constitution of the United States and on many later state constitutions is described in State of Montana ex rel. Easbey v. Highway Patrol Board, 140 Mont. 383, 372 P.2d 930 (1962). In that case the question presented was whether the lieutenant governor of Montana, while presiding over the senate as its president, had the power to cast the decisive vote on the third reading of the bill in question when there was a tie vote. The Montana Constitution provided that, "The lieutenant-governor shall be president of the senate, but shall vote only when the senate is equally divided." The court upheld the action of the lieutenant governor in breaking a tie vote on a bill before the senate, but by way of dicta also had this to say on the subject of the lieutenant governor serving as presiding officer of the senate, 372 P.2d l. c. 935:

"The people of Montana have specifically supplied the answer to the above question in their Constitution wherein they have '*expressly directed or permitted*' and conferred various *special powers* on the Lieutenant Governor, not the least of which, is *the power,* right and high privilege of presiding over the sessions and meetings of the State Senate as its President with the *express direction* that, while so presiding, he '*shall vote only when the senate is equal-*

*ly divided.'* Section 15, Article VII, Constitution of Montana." [6]

The Court observed that Missouri and other state constitutions make the lieutenant governor the presiding officer of the senate, l. c. 937:

> "Connecticut in 1818, likewise copied from Kentucky's Constitution, with the exception of that portion empowering the Lieutenant-Governor to vote in Committee of the Whole, which latter power was omitted in Connecticut's Constitution. Missouri in 1820 followed the Connecticut modification and added the casting vote in joint votes of the two Houses.

> "The Constitutions of many other states provide for a Lieutenant-Governor who· shall be the presiding officer of the Senate with the power to vote only when the Senate is equally divided. Among these additional states are: Alabama; Arkansas; California; Colorado; Delaware; Idaho; Iowa; Louisiana; Montana; Nevada; New Mexico; North Carolina; North Dakota; Ohio; Pennsylvania; South Carolina; South Dakota; Virginia; Vermont; Washington and Wisconsin." (Emphasis deleted.)

From all of the foregoing, we conclude that the ordinary, usual and generally understood meaning of the term "president of the senate," when used in constitutional provisions assigning that role to the lieutenant governor, has been and is presiding officer of that body. The fact that Art. IV, § 10 particularizes other powers (the right to debate in committee of the whole and to cast certain tie breaking votes), but does not specifically recite the power to preside, is not significant. Customarily, a nonmember of a body, even

when acting as its presiding officer, does not have the right to debate or to vote on matters considered by the body. Consequently, those powers were specifically enumerated. There was no need to specifically refer to a power to preside because, as previously noted, the description of the lieutenant governor as president of the senate included the power to preside, that being the commonly accepted meaning of the term "president of the senate." Designation as president necessarily included the power to assume the chair and act as presiding officer, just as though the section had specifically stated that the lieutenant governor should .serve as presiding officer.

It follows that unless some other constitutional provision dictates a different result, we must hold that Art. IV, § 10, not only confers on the lieutenant governor the right to serve as president of the senate, but also means that in that capacity he is to act as its presiding officer. Necessarily, in that event, we would hold that Rule 11 is unconstitutional.

We proceed, therefore, to a consideration of respondent's contentions. The first constitutional provision relied on to produce a contrary conclusion and to sustain the validity of Rule 11 is Art. III, § 18, which confers on the senate the power to establish its own procedural rules. He argues that this provision gives the senate the right to provide a procedural rule as to who shall preside over sessions of the senate since, according to respondent, Art. IV., § 10 confers merely a title (president of the senate) and does not recite that the president shall have the function of acting as presiding officer. His brief does recognize that the term "president of the senate" may imply some presidial duty or power but, he argues, any such power is

---

6. Dicta expressing a similar view of the role of a lieutenant governor is to be found in Leckenby v. Post Printing and Publishing Company, 65 Colo. 443, 176 P. 490, 491 (1918); In re Lieutenant Governorship, 54 Colo. 166, 129 P. 811, 815 (1913); Rouse v. Johnson, 234 Ky. 473, 28 S.W.2d 745, 748 (1930); State of Minnesota ex rel. Palmer v. Perpich, 289 Minn. 149, 182 N.W. 2d 182, 185 (1971). Apparently, no American court has ruled expressly on the question presented by this case. Counsel advise that they have found no such case and we.know of none.

subject to the senate's rule-making authority under Art. III, § 18. This means that the lieutenant governor is to serve as presiding officer only at such times as senate rules do not provide for him to be supplanted in that capacity by someone else.

In further support of this contention, respondent argues that the language in Art. IV, § 10, designating the lieutenant governor as president of the senate, is at most a general grant of power, whereas Art. III, § 18, conferring rule-making authority on the senate, is a specific grant of power, and that under well established rules of constitutional construction, the specific grant must prevail over the general. Such is an established rule of construction, but we conclude that the designation of the lieutenant governor as president of the senate (with what we find to be the accompanying authority to preside) is a specific designation and grant of authority, and that Art. III, § 18, granting rule-making authority, is general insofar as it applies to providing who shall preside over the senate. Hence, under this rule of construction, Art. IV, § 10 would govern if any conflict exists between the two sections. However, as indicated hereinafter, we conclude that no conflict exists between the two sections.

While Art. III, § 18 does confer on the senate the right to establish its own procedural rules, the section expressly limits that right by providing that such authority is subject to exceptions provided in the Constitution itself. One of those exceptions is established by Art. IV, § 10, which makes the lieutenant governor president and, as we interpret the language, presiding officer of that body. The effect of such provision is to provide a constitutional exception to the right of the senate to specify by rule who shall be its presiding officer. The senate may elect its president pro tempore or otherwise provide for persons to preside in the absence of the president, but it may not by rule dilute the constitutional authority conferred on the lieu-

tenant governor by Art. IV, § 10. To hold otherwise and to sustain the validity of Rule 11 would mean, as the respondent recognizes, that the lieutenant governor could be prevented by the president pro tempore from ever presiding over the senate, a possibility which we conclude the language of the Constitution does not contemplate.

In this connection, respondent points out that during the deliberations of the Constitutional Convention which drafted the 1945 Constitution for submission to the voters, one proposal concerning the lieutenant governor which the Committee on the Executive Department considered was Proposal No. 278, which read as follows:

> "The Lieutenant Governor shall possess the same qualifications as the Governor, and by virtue of his office shall be President of the Senate, *and shall appoint all standing committees of the Senate, and all other committees of the Senate unless otherwise ordered by a majority vote of senators elect.* In committee of the whole he may debate all questions, and when there is an equal division he shall give the casting vote in the Senate, and also in joint vote of both houses." (Emphasis added.)

That proposal was not adopted by the Committee or by the Convention. This indicates that the drafters decided not to expand the lieutenant governor's powers so as to authorize him to appoint senate committees, but it does not support a conclusion that the language adopted was intended to provide for displacement of the lieutenant governor as the senate's regular presiding officer at the will of the senate.

 We conclude that meaning and effect can be given both to Art. IV, § 10 and Art. III, § 18 and that there is no conflict between the two provisions. When read together, they mean that the lieutenant governor, in his capacity as president of the senate, is the presiding officer of that body and has a constitutional right to so

serve,[7] but that in presiding he must conform to procedural rules of the senate authorized and adopted pursuant to Art. III, § 18, to govern the conduct of the senate's business.[8]

Respondent next argues that to accord the lieutenant governor, a member of the executive branch of government, the right to act as presiding officer of the senate violates Art. II, § 1,[9] which provides for separation of powers between the executive, legislative and judicial branches of government. To sustain such authority in the lieutenant governor, argues respondent, would enable the executive department to control the functioning of the senate and thereby frustrate its legislative efforts.

It should be noted that Art. II, § 1 states that the separation of powers is subject to exceptions expressly directed or permitted by provisions in the Constitution itself. There are several such exceptions in the Missouri Constitution. For example, certain executive appointments are subject to advice and consent of the senate. By that provision the senate is given the right to confirm or reject appointments within the executive department and thereby to have a voice in what otherwise would be a matter confided solely to the executive department. The governor may pardon persons convicted and sentenced by the judicial branch of government. In addition, he has a voice in the work of the legislative branch by virtue of his veto power. The designation of the lieutenant governor as president of the senate, with the accompanying right to preside is another example of an exception to the absolute separation of powers. To whatever extent this permits the lieutenant governor to have a voice in legislation, it is attributable to the constitutional provision so providing. However, there is nothing in the record before us to sustain the contention of respondent that permitting the lieutenant governor to preside will permit him to frustrate the legislative efforts of the senate. Throughout the history of the state (except in 1969 and 1973), the lieutenant governor has been recognized as the regular presiding officer of the senate, with the right to preside at will. There is no evidence that this has permitted the executive department to control or frustrate the work of the senate.

Another basis urged by respondent for concluding that the lieutenant governor does not have a constitutional right to preside regularly over the senate relates to certain changes in language between the 1875 and 1945 Constitutions. When the 1945 Constitution was drafted, §§ 16 and 17 [10] of Art. V of the 1875 Constitution

---

7. This is not intended to apply to times when the senate has resolved itself into a committee of the whole. Counsel for the Lieutenant Governor, in response to a question from the bench during oral argument, stated that when the senate is so convened, someone other than the lieutenant governor is entitled to preside. Senate Rule 36 provides that at such times the president pro tempore shall appoint a chairman to preside.

There is no contention that the senate was resolved into a committee of the whole at the times involved on the afternoon and evening of June 15. Respondent's pleading does not so contend, and counsel who were asked the question during oral argument, responded that it was their understanding that the senate was not so convened at the times in question.

8. The senate has adopted rules which cover the order of business, the procedure for introduction and enactment of bills, the appointment of committees, the assignment of bills to committees, and various other procedural matters. The validity of such rules, other than Rule 11, is not an issue in this proceeding.

9. Art. II, § 1, provides as follows:

"The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

10. Sections 16 and 17 of Art. V of the 1875 Constitution provided as follows:

"§ 16. In case of death, conviction or impeachment, failure to qualify, resignation, absence from the State or other disability of

were consolidated into what became Art. IV, § 11 [11] of the 1945 Constitution. In the process, what had been the first sentence of Art. V, § 17 was deleted. Respondent argues that by deleting this sentence, Missouri eliminated a constitutional provision that specified that the lieutenant governor would preside over the senate in all situations except in those instances enumerated when the president pro tem would preside. This deletion, says respondent, disclosed an intent to leave it to the senate to determine when the president pro tem and when the lieutenant governor should preside. We do not so interpret this change. Actually, the sentence in question did not specify when the lieutenant governor should preside. Rather, it spelled out certain situations in which the president pro tempore should preside. Deletion of that sentence left the senate free, under Art. III, § 18, to provide who should preside in the absence of the lieutenant governor, but it did not confer on the senate the right to take away the authority of the lieutenant governor to preside pursuant to Art. IV, § 10.

Actually, §§ 16 and 17 of Art. V of the 1875 Constitution and Art. IV, § 11 of the 1945 Constitution all relate to succession to the governorship. None of the sections purported to deal with the right of the senate to adopt rules of procedure or who should be the regular presiding officer of the senate. These subjects were dealt with in the new Constitution in Art. III, § 18 and Art. IV, § 10. If there had been an intention to make substantial changes as to these matters, it seems clear that the language in Art. III, § 18 and Art. IV, § 10 would have been altered. That was not done. Instead, these sections were left practically unchanged from what they had been in the 1875 Constitution. Furthermore, there is no mention in the proceedings of the Constitutional Convention of any intention to dilute the powers of the lieutenant governor or to make a change in the presiding officer of the senate. We need not speculate whether the first sentence which appeared in Art. V, § 17 of the 1875 Constitution was dropped for the purpose of shortening and simplifying the language of the Constitution or to give the senate more flexibility in providing for situations where both the lieutenant governor and the president pro tempore might be absent, or for some other reason. Regardless of which was the purpose, we find no intention therein to deal with the question of the right of the lieutenant governor to preside over the senate or to alter the meaning of Art. IV, § 10.

Respondent also argues that Senate Rule 11 adopted by the senate constitutes a contemporaneous construction placed upon the Constitution by the senate whereby it

the Governor, the powers, duties and emoluments of the office for the residue of the term, or until the disability shall be removed, shall devolve upon the Lieutenant Governor."

"§ 17. The Senate shall choose a President *pro tempore* to preside in cases of the absence or impeachment of the Lieutenant Governor, or when he shall hold the office of Governor. If there be no Lieutenant Governor, or the Lieutenant Governor shall, for any of the causes specified in section sixteen of this article, become incapable of performing the duties of the office, the President of the Senate shall act as Governor until the vacancy is filled or the disability removed; and if the President of the Senate, for any of the above named causes, shall become incapable of performing the duties of Governor, the same shall devolve upon the Speaker of the House of Representatives, in the same manner and with the same powers and compensation as are

prescribed in the case of the office devolving upon the Lieutenant Governor."

11. Art IV, § 11 of the Constitution adopted in 1945 provided as follows:

"If the governor-elect die before taking office the lieutenant governor-elect shall take the term of the governor-elect. On the death, conviction or impeachment, failure to qualify, resignation, absence from the state or other disability of the governor, the powers, duties and emoluments of the governor shall devolve upon the lieutenant governor for the remainder of the term or until the disability is removed. If there be no lieutenant governor, or for any of said causes the lieutenant governor is incapable of acting, the president pro tempore of the senate and the speaker of the house in succession shall act as governor until the vacancy is filled or the disability removed."

would have the right to authorize its president pro tempore to assume the chair at will, and that under various Missouri authorities such contemporaneous interpretation, though not conclusive, is entitled to great weight and should not be departed from unless manifestly erroneous. The difficulty with this contention is that the rules of the senate for many, many years recognized that the lieutenant governor was the presiding officer of the senate, and the rules provided that the president pro tempore should preside only in the event of the absence or impeachment of the lieutenant governor or when he might be acting as governor. This was true even after adoption of the 1945 Constitution. The only instance in which a rule comparable to Rule 11 has been adopted by the senate was in 1969, when the senate adopted Rule 10 of that session. Footnote 4, supra. These two isolated instances, occurring many years after adoption of the 1945 Constitution, cannot amount to a contemporaneous construction which we should recognize and follow under the decided cases.

In this connection, we note that respondent points out that Lieutenant Governor Phelps was in the chair when the Senate Rules, including Rule 11, were adopted, but took no action to declare said rule out of order. We attach no significance to this occurrence. The lieutenant governor has no authority to declare legislative acts or rules unconstitutional. That is a function of the courts.

Finally, respondent, while recognizing the right of the Attorney General to change his mind and withdraw the opinion to Lieutenant Governor Morris dated January 20, 1969, urges that it was well reasoned and sound and should be persuasive to this Court. During oral argument, the Attorney General stated to the Court that when that opinion was written, there was divergence of opinion in his office as to its correctness and that he later became convinced it was wrong because it did not accord their plain meaning to words used in

Art. IV, § 10. We, too, conclude that his earlier opinion was wrong and should not be followed.

The existence of the prior opinion does explain why the senate at the start of the 1973 session felt justified in adopting Rule 11 and why the president pro tempore would conclude that Rule 11 conferred on him the right to assume the chair at will. However, as indicated, the fact of the prior opinion cannot be determinative herein.

■ We conclude and hold that Rule 11 conflicts with Art. IV, § 10, and must be declared unconstitutional; hence it cannot authorize respondent to deprive the lieutenant governor of his right to preside over the Missouri Senate. Accordingly, it is ordered that respondent henceforth desist from acting as presiding officer of the senate when the duly elected and authorized lieutenant governor is present and desirous of exercising his role as presiding officer of the senate.

All the judges concur except DONNELLY, C. J., who withdraws concurrence and dissents in separate dissenting opinion filed.

DONNELLY, Chief Justice (dissenting).

This is an original proceeding in quo warranto. In State ex inf. McKittrick ex rel. City of Lebanon v. Missouri Standard Telephone Co., 337 Mo. 642, 656, 85 S.W.2d 613, 620 (Banc 1935), this Court said: "It is well established that this court may properly exercise a judicial discretion in granting or refusing a judgment of ouster in a *quo warranto* proceeding. * * * The *public good* is the element chiefly to be considered as a guide to the court in the exercise of its discretionary authority. * * *." (Emphasis mine).

The substance of this proceeding is a contest for power between the executive and legislative departments of our state government. The principal opinion some-

what obliquely addressed itself to this fact by stating:

"We conclude that meaning and effect can be given both to Art. IV, § 10 and Art. III, § 18 and that there is no conflict between the two provisions. When read together, they mean that the lieutenant governor, in his capacity as president of the senate, is the presiding officer of that body and has a constitutional right to so serve, but that in presiding he must conform to procedural rules of the senate authorized and adopted pursuant to Art. III, § 18, to govern the conduct of the senate's business."

I concurred in the principal opinion because I hoped the language quoted above would resolve the controversy and enable the members of the senate to proceed to the consideration of issues eminently more deserving of their attention. However, the bickerings and posturings in the senate since the principal opinion was adopted rather forcibly demonstrate that I was wrong. The controversy continues unabated.

It is most difficult to decide cases in a vacuum and for me this has been an artificial case from the beginning. The parties have not seen fit to enlighten this Court as to whether any conduct on the part of the Lieutenant Governor precipitated his ouster by respondent from the chair of the senate on June 15, 1973. Therefore, the Court has no way of knowing whether respondent's action was arbitrary or resulted from a failure on the part of the Lieutenant Governor to conform to the desires of the senate as to how its business should be conducted on June 15, 1973. There is no evidence from which we can ascertain whether or not the Lieutenant Governor frustrated "the legislative efforts of the senate" on June 15, 1973.

I respectfully submit that the time has now come to recognize that the *public* has a prevailing interest in having this controversy resolved and concluded. In *quo warranto*, the "public good" is of paramount importance. I would withdraw the opinion adopted in this case, would appoint a master to ascertain the facts, and would *then* decide the essential issue on its merits and on the basis of Article II, § 1 of the Constitution of Missouri. It reads as follows:

"The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

I withdraw my concurrence and I dissent.

ON MOTION FOR CLARIFICATION

PER CURIAM:

As stated in the foregoing opinion, the parties were in agreement when this case was submitted that the sole and only issue to be decided was whether the lieutenant governor has a constitutional right to preside over the Missouri Senate. We held that he does and accordingly held Senate Rule 11 to be unconstitutional.

No motion for rehearing was filed by any party, but respondent did file what was denominated a motion for clarification. It stated that while our opinion seemed entirely clear that the lieutenant governor has the right to preside and in so doing is to conform to duly adopted procedural rules of the senate until such time as they may be adjudicated invalid by a court, nevertheless the lieutenant governor had taken the position that he had the right as president of the senate to rule on all points of order and to assign bills to committees, even though Senate Rules 10 and 48, adopted pursuant to Art. III, § 18, V.A.M.S.,

provide otherwise.[1] Respondent's motion further stated that while it was his position that he has the obligation to enforce Rules 10 and 48 as well as other procedural rules until they are declared invalid, and he planned to do so, he did not want to violate the court's order. He requested the court to supplement its opinion to the extent necessary to resolve the controversy.

After receiving written suggestions from relator and intervenor with respect to said motion, the court called for the filing of position papers and briefs by the parties and then set the matter for oral argument.

At the outset, we note that intervenor (with concurrence by relator) has itemized a considerable list of powers which he says traditionally and inherently belong to the president of the senate as the presiding officer of that body. Both intervenor and relator request the court to spell out and delineate all powers of the lieutenant governor as president of the senate, irrespective of what present senate rules provide. In response, the respondent points out that most of the duties listed by intervenor are those which intervenor presently is doing and which senate rules provide he shall do and there is no existing controversy with reference to performance of those duties other than those involved in Rules 10 and 48.

■ ■ We conclude that this per curiam should be limited to a consideration of the constitutionality of Rules 10 and 48. It is not appropriate in this proceeding to do otherwise. This is quo warranto. We cannot order respondent to refrain from doing something he is not doing and has not threatened to do. Furthermore, we do not render advisory opinions, which is what we would be doing if we said that if the senate at some future time repeals some of its existing rules and then provides that the lieutenant governor as president of the senate shall not do things he presently does, such action would violate constitutional principles. Hopefully, what we said in our principal opinion, together with expansion thereon in this per curiam, will resolve the controversy and enable the parties to proceed under senate rules with orderly transaction of the business of the senate.

There is another reason why we should not reach out and undertake to decide constitutional questions which presently are not in issue. Historically, most constitutional provisions (not being easily amended) are written in broad, general terms, without undertaking to spell out specific details. As constitutional issues arise, the courts interpret and apply the broad general constitutional principles and provisions. Experience at both the national and

---

1. Rule 10. "The president pro tem shall be parliamentarian of the senate and may decide all points of order, and in his absence such points of order may be decided by the chairman of the Committee on Judiciary, except that in either case, the point of order may be referred by the then acting parliamentarian, to the Committee on Parliamentary Procedure for consideration and determination. All rulings on points of order shall be subject to an appeal to the senate and all questions and points of order shall be noted by the secretary with the decision thereon."

Rule 48. "Every bill and appointment shall be referred by the president pro tem to a committee; and no bill shall be considered for final passage unless it has been reported on by a committee and printed for the use of the senators. A report of all bills recommended 'do pass' by a committee shall be submitted to the senate by the chairman and all committee amendments accompanying the report shall be printed in the Journal.

"After a bill has been referred to a committee, one-third of the senators elected has the power to relieve a committee of further consideration of a bill and place it on the calendar for consideration. In any case where a committee has been relieved of further consideration of a bill as herein provided, a majority of the senators present but not less than one-third of the senators elected, may, at any time before final passage thereof, again refer the bill to the same or some other committee for consideration. No bill or resolution shall be reported adversely by any committee until the author of the bill or resolution has been given an opportunity to appear and be heard before the committee to which it is referred."

state levels demonstrates the wisdom of this procedure. It permits the Constitution to have the flexibility needed to meet changing times and conditions. It would make no more sense for a court to write a detailed, all-inclusive itemization of powers and duties, including those not in issue, than it would for the framers of the Constitution to do so in the first instance. Accordingly, we limit this per curiam to a consideration of the constitutionality of Rules 10 and 48.

As noted in our principal opinion, ours is a government with a constitutional separation of powers between the executive, legislative and judicial branches, and no person belonging to one department may exercise a power belonging to another department except in those instances expressly directed or permitted by the Constitution. Art. II, § 1, V.A.M.S. The office of lieutenant governor is created by Art. IV, § 10, V.A.M.S., and he is a member of the executive branch of the government. Under Art. II, § 1, V.A.M.S., he may not exercise legislative powers except as expressly directed or permitted by provisions of the Missouri Constitution. Language permitting such incursion by the lieutenant governor is to be strictly construed. State ex rel. Cason v. Bond, 495 S.W.2d 385 (Mo. banc 1973).

Art. IV, § 10, V.A.M.S., specifically provides that in his capacity as president of the senate the lieutenant governor may debate all questions in committee of the whole and that he "shall cast the deciding vote on equal division in the senate and on joint vote of both houses." These are the only specifically enumerated powers. In addition thereto, we have held in our principal opinion herein that his designation as president of the senate by Art. IV, § 10, V.A.M.S., also includes the right to serve as the senate's presiding officer. When the lieutenant governor functions in that capacity, he, like any senator who may preside from time to time, is subject to the procedural rules authorized and adopted pursuant to Art. III, § 18, V.A. M.S.

The powers and functions referred to in Rules 10 and 48 are not given the lieutenant governor in Art. IV, § 10, V.A. M.S., or elsewhere in the Constitution. We hold Rules 10 and 48 constitutional. It follows that the lieutenant governor, while presiding in the senate, must conduct himself in accordance with Rules 10 and 48.

All concur.